G. W. Fogg, *Appellant,* v. Mary A. Goode as Executrix of the Will of J. S. Goode, Deceased, and S. A. Means, *Appellees.*

Opinion Filed July 14, 1919.

1. The office of an interpleading suit is to protect one against the embarrassment of conflicting claims and double vexation in respect to one liability.

2. A stakeholder's right of interpleader is subject to the technical requirement that the opposing claimant's titles must be in privity with each other, one derived from the other or both derived from a common source.

3. Where claimants to a fund in the hands of a stakeholder assert their claims under adverse titles and not in privity and when their claims are of different natures, a bill of interpleader cannot be maintained.

4. F. owed a debt to G. who died; the debt was evidenced by a promissory note payable to the order of G. and held by G.'s widow as Executrix of his Will; M. claimed the debt either as owner of half interest or as surviving partner of. G. *Held,* that F. was not entitled to an interpleader as against G.'s executor and M.

5. Where a bill of interpleader fails to show a title to the fund in one of the claimants the bill is defective.

6. The person desiring an interpleader cannot force the claimant under a contract with the stakeholder to interplead with a stranger.

7. The complainant in an interpleading suit cannot cast upon the defendants or claimants of the fund the burden of settling the question as to which of them the complainant obligated himself.

8. A person seeking the advantages 'of a bill of interpleader must show not only that he stands indifferent between the claimants, that he is without interest in the controversy, but also that he is in the position of an innocent stakeholder and that no act of his has caused the embarrassment of conflicting claims and the peril of double vexation.

An Appeal from the Circuit Court for Alachua County; J. T. Wills, Judge.

Order affirmed.

*T. B. Ellis, Jr.,* for Appellant;

*Thomas W. Fielding,* for Appellees.

ELLIS, J.—G. W. Fogg brought his bill of interpleader against Mary A. Goode as Executrix of the Will of J. S. Goode, deceased, and S. A. Means. In the amended bill of complaint it was alleged that complainant became indebted upon a promissory note on October 2, 1912, in the sum of $486.25. That the payee named in the note was J. S. Goode; that the note was payable six months after date, and bore interest from maturity at the rate of 8% per annum. The note, therefore, became due April 2, 1913. It is alleged that on April 4, 1913, complainant paid $5.55 "on the principal." The interest to that date amounted to twenty-two cents, which added to the principal made the amount then due $486.46. After applying the payment of $5.55 there remained due on April 4, 1913, the sum of $480.91. It is alleged that on June 12, 1913, the complainant received from J. S. Goode a written request to execute two notes, each for the sum of $243.12, one payable to the order of J. S. Goode and

one to the order of S. A. Means. A copy of the written request is attached to the original bill and reference is prayed to it. The request, which was in the form of a letter from J. S. Goode to G. W. Fogg, states that Goode and Means had dissolved co-partnership and it would be "very much more convenient to have the original note of $486.25, which was due April 2nd, divided into two notes of $243.12 each, one to Mr. Means and one to me." On June 12, 1913, when this request was made there was due on the note two months and eight days interest, or $7.37; this added to the principal of $480.91 made the total sum of $488.28 due, or two dollars and four cents more than the aggregate of the two notes requested by Goode.

It appears from the allegations of the bill that the request was not complied with by Fogg, but that on January 13, 1914, seven months after the request by Goode for two notes was made, Fogg paid on the note the sum of fifty dollars, and on March 9th of the same year he paid on the note the further sum of $110.00. It does not appear definitely to whom these payments were made, presumably, however, to the holder of the note.

It is claimed by the complainant that the request by Goode for the two notes aggregating a sum equal to the principal of the original note was unreasonable because the amount due on the note at the time of the request was about five dollars less than that aggregate. This position we have shown to be unfounded, as the amount due was more, and not less than the aggregate of the two notes. The complainant's alleged reason therefore for not complying with the request is vain. It is alleged that Means joined in the request for the notes, and that the complainant immediately upon the request being made "endeavored to affect settlement with the said parties of the

amount he was then due thereon, but that·neither of said
parties would allow complainant to do so, and from that
time on their demands upon complainant conflicted." That
Goode claimed all of the amount and Means claimed half,
and each denying the claims of the other and refused to
allow any settlement except according to their respective
conflicting demands.

It appears that Goode died July 5, 1916. That since
the death of Goode, Means has continued to demand half
of the principal sum of $486.24, and the defendant, Mary
A. Goode, as exetrutrix, demands ·the payment of the
whole sum and has instituted an action against the com-
plainant for the recovery of the entire sum, and that
Means later, on February 19, 1917, commenced his action
as surviving partner of the firm of J. S. Goode and S. A.
Means, which did business under the firm name and style
of "J. S. Goode." That the executrix of J. S. Goode claims
to hold possession of the note. It is alleged that the com-
plainant is being annoyed and embarrassed by the con-
flicting demands of the parties; that he is not in collusion
with either of them; that he has no interest in the fund
and has not been indemnified by either party. He prays
that he may be permitted to pay the amount due which
is alleged to be $445.66 into the registry of the court
and that the defendants be required to interplead.

There was a general demurrer to the bill for want of
equity; that the complainant was guilty of laches; that
the note was due and should have been paid in April,
1913; that complainant had made payments upon the note
since the date upon which he alleges that the defendants
began to annoy him with their conflicting claim; that
complainant brought about the situation of which he
complains by his own act; that payment to either would

have discharged the debt if Goode and Means were partners; that payment of the note to the holder would discharge the complainant, and that he had not shown diligence.

The demurrer was sustained and the bill dismissed and the complainant appealed.

The assignments of error are that the court erred in sustaining a demurrer to the original bill; that he erred in sustaining the demurrer to the amended bill and dismissing it. The amended bill contains all the allegations of the original bill and in addition the specific allegation that the request by Goode and Means for the two notes was for an amount greater than complainant then owed on the original note, and for that reason alone the complainant refused to execute them, but immediately "began to endeavor to effect a settlement" with Goode and Means.

The office of an interpleader suit is to protect one against double vexation in respect to one liability. See Johnson v. Blackman,      Ala.    , 78 South. Rep. 891. But the stakeholder's right of interpleader is subject to the highly technical requirement that the opposing claimant's title must be in privity with each other, one derived from the other, or both derived from a common source. Pomeroy's Eq. Jur. Sec. 1324, note; VII M. A. L. 105. Fletcher's Equity Pleading and Practice sections 772, 773, 775 states the rule to be that the defendant's claims must be by different or separate interests. The rule as stated in the last mentioned work was quoted by this court in Lowry v. Downing Mfg. Co., 73 Fla. 535, 74 South. Rep. 525. Both authors agree that where the claimants assert their rights under adverse titles and not in privity and when their claims are of different natures the bill cannot be maintained.

The bill in this case does not admit or show a title to the fund in Means, but merely alleges that he claims a half interest, but since the death of Goods demands the entire sum, whereas the bill admits that the note was payable to Goode, that he is dead and the defendant, Mary Goode, is his executrix. The rule is as laid down by Fletcher that the bill would be defective if it does not show a title in each claimant. Fletcher's Eq. Pleading & Practice, Sec. 775.

One of the defendants in this case claims the fund as the executrix of the will of the payee of the note, the other so far as the bill alleges arbitrarily claims a half interest in it. In what right or interest the bill does not show, although the exhibits indicate that he claims by reason of a partnership settlement between him and the deceased Goode; but it is also just as clear that he claims as surviving partner of Goode. The complainant in this case was under an independent contractual relation with J. S. Goode, to whose order the note was made payable. Means was not known in the transaction; he was a stranger so far as the complainant was concerned. In that case the complainant could not have had an inter-pleader against them. The complainant could not dispute Goode's ownership of the note so long as it remained in his hands. The maker of the note had to pay according to agreement.

Now if Means claimed by virtue of indorsement or assignment to him either by Goode or the executrix there would be some privity between him and the executrix; but as it appears from the bill he is a stranger to the executrix or her testator so far as the contract is concerned. He claims independently of and adversely to the executrix, and so far as half of the fund is concerned his claim ap-

pears to have been adverse to Goode, because it appears from the exhibits that at one time Goode was willing that Means should have half of the fund, but now Means claims it all.

The rule that the party desiring interpleader cannot force the claimant under the contract and a stranger to interplead seems to be well settled. See 15 R. C. L. pp. 224-235; Stephenson v. Burdette, 56 W. Va. 109, 48 S. E. Rep. 846, 10 L. R. A. (N. S.) 748; 7 M. A. L. pp. 104-105.

There is another principle which we think would defeat the complainant's claim to the right of an interpleader in this case. The complainant is supposed to know whether he has obligated himself to one of the parties and cannot cast upon them the burden of settling that question. See 15 R. C. L. p. 226.

It appears that the complainant obligated himself to pay Goode and that he declined to obligate himself to Means even to pay half the sum. Again, one seeking the advantages of a bill of interpleader must show not only that he stands indifferent between the claimants, that he is without interest in the controversy, but that he is in the position of a mere innocent stakeholder, and that no act on his part has caused the embarrassment of conflicting claims and the peril of double vexation. 15 R. C. L. p. 227.

The complainant failed to pay the note to Goode at maturity, the neglect of his obligation there and the continuance of that neglect or refusal to pay during Goode's lifetime gave rise to the embarrassment of the conflicting claims and peril of double vexation after Goode's death. It appears that the complainant even encouraged and courted the embarrassment which he alleges afterwards followed, by ignoring his written obligation to Goode

when a payment to him would have discharged and· cancelled the debt and recognizing the right or claim of Means to a voice in the settlement.

We think therefore that the Chancellor did not err in his ruling on either demurrer and the order sustaining the demurrer and dismissing the bill is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.