**FRENSLEY BROTHERS LUMBER CO. v. FIREMANS FUND INSURANCE CO.**

No. 13367—Opinion Filed Sept. 16, 1924.

Rehearing Denied Oct. 14, 1924.

**Insurance—Lien of Mortgagee on Proceeds of Fire Policy.**

Where, at the time of the execution of the mortgage upon real property, the mortgagors carried insurance upon the buildings in excess of the amount secured by the mortgage and by the terms of the mortgage the mortgagors agreed to "keep the buildings on said premises insured for the sum of $—— loss, if any, payable to said mortgagee as their interest may appear" and the buildings were destroyed by fire while the insurance was in force and the mortgage unsatisfied, the mortgagee had an equitable lien upon the proceeds of the insurance policy for the amount of the indebtedness.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Bryan County; Geo. S. March, Judge.

Action by Frensley Brothers Lumber Company against Firemans Fund Insurance Company; First National Bank of Durant, intervener. Judgment for intervener, and plaintiff appeals. Reversed, with directions.

Earl Q. Gray and H. C. Potterf, for plaintiff in error.

Hatchett & Ferguson, for defendant in error.

Opinion by RAY, C. The only parties interested in this appeal are Frensley Brothers Lumber Company, plaintiff in error, plaintiff below, and the First National Bank of Durant, intervener. For convenience they will be referred to as the lumber company and the bank..

The lumber company furnished to M. F. Cordell and Mary Cordell, husband and wife, lumber for the construction of a residence upon their homestead and perfected its lien by filing its lien statement in the office of the district clerk. January 1, 1920, Cordell took out a fire insurance policy with the Fireman's Fund Insurance Company, for $1,800. October 8, 1920, the Cordells executed their promissory note to the lumber company in the sum of $1,336.70, and to secure its payment executed their mortgage on the property, which was duly recorded in the office of the county clerk, and the lumber company released its materialman's lien. In December following the building was destroyed by fire. After the fire M. F. Cordell executed an assignment of the insurance money to the lumber company, directed to its attorney and the local insurance agent, and the assignment was delivered to and held by the local agent of the insurance company. Mrs. Cordell did not join in the assignment. The lumber company commenced suit against the insurance company to recover the amount of the loss. Later it amended its petition by setting up an equitable lien on the proceeds of the policy by reason of an insurance clause in the mortgage. Within a few days thereafter Cordell and his wife joined in an assignment of the proceeds of the insurance policy to the bank which thereafter intervened in the action. The insurance company acknowledged liability and, on the issues joined between the lumber company and the bank, judgment was for the bank and the lumber company appeals. The lumber company contends that it has an equitable lien upon the proceeds of the insurance policy by reason of a clause contained in its mortgage by which the Cordells agreed to keep the property insured for the benefit of the mortgagee, while the bank contends that the mortgage contained no such agreement. That part of the mortgage over which the controversy arises is as follows:

"And these presents are upon the express condition that if the said M. F. Cordell and

Mary Cordell, their heirs * * * shall pay or cause to be paid to the said Frensley Brothers Lumber, their heirs * * * the sum of thirteen hundred thirty-six and 70-100 dollars payable as follows, to wit: one note $1,336.70 dollars on the first day of January, 1921, with interest thereon at 10 per cent, per annum, payable annually according to the tenor and effect of said promissory note bearing even date with these presents and shall pay all taxes and assessments levied upon said real estate and all other taxes, levies and assessments, levied upon this mortgage or the note which this mortgage is given to secure before the same becomes delinquent and keep the buildings on said premises insured for the sum of $—— loss, if any, payable to said mortgagee as their interest may appear, then these presents to be void, otherwise to be and remain in full force.

"It Is Further Agreed, (1) That if the said mortgagor shall fail to pay such taxes or procure such insurance the said mortgagee may pay such taxes and procure such insurance; and the sum so advanced, with interest at 10 per cent. shall be repaid by said mortgagor, and this mortgage shall stand as security for the same. (2) That a failure to pay any of said money, either principal or interest, when the same become due, or a failure to comply with any of the foregoing agreements shall cause the whole sum of money herein secured to become due and collectible at once at the option of the mortgagee."

On the part of the bank it is contended that by reason of the clause being blank as to the amount of insurance, that is, the blank space not being filled in, the agreement was incomplete and not enforceable, and, second, that there is no direct provision of the mortgage, even if the insurance clause had been complete, that made it the direct obligation of Cordell and wife to insure the premises, but that the mortgage simply provided that if they failed so to do the same should be a breach of the condition of the mortgage.

As to the second proposition, it appears sufficient to observe that if a failure to keep the premises insured was a breach of the conditions of the mortgage, then one of the conditions of the mortgage must have been to keep the property insured. The first proposition, however, that the failure to fill in the blank; or, in other words, leaving the blank space as to the amount of insurance agreed to be kept up, made the agreement to insure incomplete and not enforceable, presents a more difficult question. The trial court took the view that blank dollars meant no dollars. The question is, does the quoted provision of the mortgage contain a covenant upon the part

of the mortgagors to keep the property insured for the benefit of the mortgagee. It contains three references to insurance: (a) To keep the buildings on said premises insured for the sum of $——, loss, if any, payable to the said mortgagee as their interest may appear; (b) that if the mortgagors shall fail to procure such insurance then the mortgagee may procure such insurance and the sum so advanced shall be repaid by the mortgagor and the mortgage shall stand as security for same; (c) that a failure to comply with any of the foregoing agreements (including insurance) should cause the whole sum of money herein secured to become due and collectible at once at the option of the mortgagee.

No authority has been called to our attention to the effect that it is essential to make a complete covenant to insure that the amount of the insurance to be carried should be specified. But it is argued that the fact that the blank space was not filled shows that it was the intention of the parties that no insurance was agreed to be carried by the mortgagors. In other words, it is argued that by reason of the blank not being filled the language of the covenant otherwise was nullified. We think this contention cannot be sustained in reason. The first question which naturally presents itself for consideration is what would be the object of specifying a definite amount of insurance to be carried by filling in the blank. The evidence shows that at the time the mortgage was executed the Cordells were carrying insurance in an amount exceeding the note secured by the mortgage. If the blank had been filled by inserting $1,800, the amount of insurance then carried, it could have availed the mortgagee no benefit above the amount of the note, $1,336.70. They could not have held the insurance above the amount of the indebtedness. If the covenant had been to keep the property insured for the benefit of the mortgagee, and no particular amount specified, the presumption would be that it was for the amount of the indebtedness or the amount the property would carry. It therefore seems to us that the only purpose of specifying the definite amount of the insurance by filling in the blank could have been to place a limitation on the amount of insurance which they agreed to carry. It is not reasonable to say, in the face of the three references to insurance, that because of the meaningless phrase, "for the sum of $——," it was not the intention of the parties that the insurance should be kept up for the better protection of the mortgagee. We think the clear intention of the parties was

that the mortgagors were to keep the property insured for the protection of the mortgagee in an amount not specified.

In Griffitts v. Fields, 95 Okla. 141, 218 Pac. 699, where the mortgage provided:

"In the event of foreclosure the mortgagor will pay to the plaintiff $——— as a reasonable attorney fee in addition to all other legal costs and statutory fees * * *"
—and the trial court had allowed $150 as a reasonable attorney's fee, this court held that the fee was properly allowed and the judgment was affirmed. Counsel for the bank concede the correctness of the conclusion reached· in that case for the reason that the court could easily determine what was a reasonable sum for the services performed, but contend that in this case we are dealing with a covenant which, if made, would transfer valuable rights of property. We are unable to reach that conclusion. The covenant to insure did not transfer valuable property rights independent of the other provisions of the mortgage. The valuable property rights were transferred by the execution of the mortgage without considering the covenant to insure. By the execution of the mortgage the interest of the mortgagors was conveyed to the extent of the indebtedness subject to the mortgagor's right of redemption. When the building was destroyed by fire the insurance money stood in place of the building. The agreement to insure was merely an agreement that the mortgagors would maintain the value of the insured property for the benefit of the mortgagee even though it should be destroyed by fire.

Only one case has been cited which appears to be directly opposed· to the conclusion here reached. That is the case of Mc-Caslin v. Advance Manufacturing Co., from the Supreme Court of Indiana, 58 N. E. 67. The syllabus is as follows:

"A provision in a mortgage that the mortgagor shall keep the property insured for the benefit of the mortgagee in the sum of — thousand dollars does not require the mortgagor to insure the property for the benefit of the mortgagee."

But an examination of the opinion in that case discloses that this question was not given serious consideration. The case was disposed of adversely to the appellant upon other grounds. The only discussion of the question in the body of the opinion is in these words:

"* * * The part of appellant's mortgage in regard to insurance provides that the 'mortgagor will keep the buildings thereon insured for the benefit of the mortgagees

and the De Pauw University, as their interest may appear, 'to the amount of $——— thousand dollars.' The blank before the word 'thousand' not being filled, so as to show how many thousand dollars insurance was to be carried,—whether one or more,—said provision is incomplete. Appellant's mortgage, therefore, contains no agreement requiring the manufacturing company to insure said property for any amount. * * * But, even if it could be construed to require said company to insure said property for $1,000, the insurance for $5,500, payable to Denny, trustee, and appellant, is a sufficient performance of the same."

Having reached the conclusion that the covenant to insure for the benefit of the mortgagee was complete, it necessarily follows that the lumber company has an equitable lien upon the proceeds of the insurance policy to the amount of the indebtedness. The record discloses that the bank had notice, both actual and constructive, of the mortgagor's covenant to insure for the benefit of the mortgagee prior to its acceptance of the assignment. Such assignment was subject to the lumber company's equitable lien. The judgment should be reversed, with directions to enter judgment for the lumber company in conformity to the views expressed in this opinion.

By the Court: It is so ordered.