R. R. ATWELL and JESSIE C. ATWELL v. THE WESTERN FIRE INSURANCE COMPANY, of FORT SCOTT, KANSAS, a Corp., and THE FIRST BANK & TRUST COMPANY, of PENSACOLA, a Corp.

163 So. 27.

Opinion Filed August 29, 1935.

*Coe & McLane,* for Appellants;

*Watson & Pasco & Brown,* for Appellee, The First Bank & Trust Company;

*William Fisher,* for Appellee, Western Fire Insurance Co.

Davis, J.—On June 21, 1934, Western Fire Insurance Company filed its bill of interpleader against R. R. Atwell and Jessie C. Atwell and the First Bank & Trust Company of Pensacola.

The bill alleged in substance that plaintiff on July 12, 1932, by policy No. F-72441, insured for a term of three years the dwelling of R. R. Atwell; that on or about July 24, 1932, The First Bank & Trust Co. of Pensacola, claiming to act with authority and acquiescence of R. R. Atwell, had plaintiff's agent in Pensacola issue, conditioned on its being endorsed on said policy, a mortgage clause making the loss under the policy payable to the Bank, as mortgagee; that it was issued in good faith and upon reasonable grounds of belief; that while the policy was in full force and effect the insured dwelling was destroyed by fire, and both R. R. Atwell and the bank made claims for the $1000.00 due under

the policy, the latter claiming an equitable lien upon the proceeds thereof; that since the fire, the bank has claimed and R. R. Atwell has denied that said bank had authority to procure issuance of the mortgage clause, and plaintiff has no means of knowing which is correct; that the endorsement was never attached to said policy; that the bank has notified plaintiff that it claims the proceeds of the policy by reason of an equitable lien, irrespective of the mortgage clause; that plaintiff has no interest in the controversy except to protect itself by paying the claim to the one justly and legally entitled to receive it; that no wilful or negligent act of plaintiff has caused the embarrassment of conflicting claims or peril of double vexation; that plaintiff admits $1000.00 is due under the policy and pays it into the court's registry; that said policy insured Atwell from loss whereas the insured property was owned by R. R. Atwell and Jessie C. Atwell and Jessie C. Atwell as an estate by the entirety; that plaintiff was willing to waive this matter in order to settle the differences; that plaintiff is being sued at law by R. R. Atwell and in equity by the bank upon the policy of insurance; that one point of controversy is whether the bank has an equitable lien upon the proceeds of the policy, and the other whether the bank was authorized by R. R. Atwell to procure the mortgage clause, and a determination of these points is necessary to protect the plaintiff from double payment under said policy; that the rights of both parties defendant arose under the policy, they being in privity with each other with respect to such fund; that if R. R. Atwell recovers in law action, plaintiff will have to pay $1000.00 regardless of the bank's claim; that all persons interested in said policy are parties and their rights can be determined in this proceeding.

The bill was subsequently amended and the plaintiff de-

posited in the court's registry in addition to the $1000.00, $100.00 statutory attorney fees, $4.13 costs of the law suit and $36.70 interest, totalling $140.83.

To the amended pleading of the insurance company, the Atwells filed a motion to dismiss. This was on the ground that the insurance company did not stand indifferent as between the parties against whom interpleader is sought; because the insurance company in issuing the mortgage clause at a stranger's request had caused embarrassment of conflicting claims and peril of double vexation upon which it founds its demand for interpleader; because one question to be tried is whether or not the insurance company, by reason of its own act, was under independent contractual liability to plaintiff; because the bill did not show the bank had a bona fide claim to an equitable lien on the proceeds of the policy but merely alleges legal conclusion in reference thereto.

The motion to dismiss was overruled. It was thereupon ordered that as neither of the defendants wished to plead further to the bill, and the bank having no objections to being interpleaded with the Atwells that the insurance company be released from further obligation under said policy. Defendants were enjoined from prosecuting further any action at law or in equity against the insurance company on said policy, and were ordered to interplead.

On July 16, 1934, the bank filed its claim stating in substance that pursuant to negotiations the Atwells purchased said land from M. C. Boley for the purpose of erecting a dwelling thereon, and commenced construction of the dwelling shortly afterward; that they gave as part of the purchase price for the land their negotiable promissory note for $1900.00, dated June 22, 1931, and as security a mortgage on the land; that for valuable consideration the note

was endorsed and mortgage assigned to the bank on July 3, 1931; that this clause was contained in the mortgage:

"That they (mortgagors) will keep the improvement upon said mortgaged property insured for a sum not less than _____ dollars, in an insurance company, or insurance companies to be approved by the mortgagee as his interest may appear, until such note be fully paid;" that when the bank acquired the note and mortgage the dwelling was either completed or in course of construction; that on August 23, 1931, the Atwells insured the dwelling for $1000.00, which was in force when fire destroyed the dwelling on December 7, 1933, making insurer liable to insured for $1,000.00; that although the policy was issued to the Atwells, yet the bank as mortgagee has an equitable lien on the proceeds of the policy deposited in court; that there is due on the mortgage $1660.00 with interest at 8% from December 29, 1932, and a reasonable attorney's fee; that R. R. Atwell is insolvent and Jessie C. Atwell is a married woman and none of her property is liable for this indebtedness, so the bank claims the amount deposited in court. As an independent claim the bank stated that the insurance company issued a mortgage clause, making the policy payable to the bank as mortgagee; which was issued at the request of the Atwells and that the money was payable to the bank.

On July 23, 1934, the bank amended its claim by stating that prior to commencement of the law action by the Atwells against the insurance company, the latter was willing and ready to pay the insurance to the bank to be credited on the mortgage indebtedness, but the Atwells denied there was any lien on the policy, putting the bank to the expense of litigating both in his suit and in the equity suit against the insurance company.

On July 19, 1934, the Atwells made a motion to strike paragraph one of the bank's claim because it stated no facts which if true would entitle the bank to payment of the funds in controversy; and further because the allegations negative the existence of alleged equitable lien sought to be foreclosed. The court denied the motion.

On July 21, 1934, the Atwells filed their answer to the bank's claim in which they admitted purchase of the land from Boley and that Boley incidentally knew they intended to construct a building thereon, and that they executed the note and mortgage to Boley; but denied that the contemplated construction of the dwelling entered into the transaction or constituted consideration for extension of credit for any part of the purchase price, it being unimproved woodland at the time of purchase and execution of the mortgage. They admitted assignment of the mortgage to the bank, but have no other knowledge of or connection with the transaction.

They denied agreeing to keep improvements insured in any amount, stating that the mortgage was prepared by Boley on a printed form containing a covenant to insure; that said covenant was purposely left uncompleted with the intention to render it ineffective because there was no understanding, undertaking, agreement or promise for procurement of insurance at the time of transfer or in the future upon improvements to be erected, and to their best knowledge, recollection and belief the improvements were not erected nor in course of construction on July 3, 1931. They admitted insurance was taken on the improvements and the proceeds of the policy had been deposited in court; but denied the bank's equitable lien thereon. They denied R. R. Atwell's insolvency but admitted he was financially embarrassed and unable to meet current obligations. They

admitted Jessie C. Atwell was a married woman and that none of her property was liable for the debt.

They stated that the property was held as an estate by the entireties, was homestead, the proceeds of the insurance were exempt under the constitution and laws of Florida, and that no instrument was drawn to subject the same to a lien for the benefit of the bank; that they are without knowledge whether the insurance company has issued the mortgage clause or not and demand strict proof thereof; that if issued, it was without force or effect because not attached to the policy and because not issued at the instance and request of either of the Atwells; that defendants did not authorize its issuance and had no knowledge thereof until the fire; that if issued at all, it was issued improvidently and negligently by an agent of the insurer upon an unauthorized application of some person unknown to defendants; that the sum deposited in court represents the proceeds of said policy; that the insurer failed to make payment or file bill of interpleader until after the common law action section had been instituted; that the amount deposited for costs and attorney's fees should not go to the bank.

On July 25, 1934, the bank filed its motion for final decree upon the pleadings on the ground that the answer was insufficient as a defense to the bank's claim.

On July 31, 1934, the court entered final decree in the case awarding the bank $1,036.70, representing the principal sum with interest; and awarded the Atwells $104.13, representing attorneey's fees and costs in the lawsuit.

The Atwells have appealed from the final decree, assigning as error the ruling of the court sustaining the appellee insurance company's right to maintain its bill of interpleader

as well as error in the decision of the Chancellor on the writs as between the Atwells and the appellee bank.

The contention of the Atwells is that the insurance company was not entitled to maintain its bill of interpleader because, so it is claimed by appellants, its own act in improvidently issuing a mortgagee payment clause in favor of the bank, without the established authority of the insured so to do, had provoked the *concursus* wherein the insurance company, for its own sole benefit, was forced to attempt interpleader for the purpose of making the Atwells litigate their rights with the bank, a stranger to the contract of insurance insofar as the Atwells were concerned, to save the complainant insurance company from being subjected to a possible independent contractual liability to the Atwells for the amount of the insurance policy, for the collection of which the Atwells had brought a suit at law at the time the insurance company's bill of interpleader was filed.

But the undeniable fact is that before the insurance company resorted to the filing of its bill of interpleader, both claimants under the one insurance policy, had already filed against the insurance company separate suits to sequester and have applied to their respective claims, the one and only amount of the insurance contracted for by the Atwells. Both suits brought were for the collection of the proceeds of the one and only insurance policy, although the Atwells' suit was one at law predicated on the contract of insurance itself, while the bank's suit was one in equity, brought primarily on the theory that whatever might be the bank's enforceable legal rights as a stipulated beneficiary of the insurance policy under its mortgagee payable clause (the bank's authority to negotiate which was emphatically denied by the Atwells), it certainly had an equitable right to a lien

on the Atwells' proceeds of the policy, under a covenant to that effect to be found in the Atwells' mortgage itself.

Thus we have a situation in which the fundamental controversy underlying the interpleader suit concerns but one and the same proceeds of an insurance policy. This policy the insurer had indisputably issued to the Atwells. And under such policy the insurer admitted that it had become liable to pay the proceeds thereof either to the Atwells, as the insured, or to the bank, as equitable lien claimant to such proceeds, both having sued the insurance company to the end of enforcing their respective claims, the Atwell's legal, the bank's equitable in character.

The fact that the insurance company had, prior to the loss, acted at the request of the bank in issuing a mortgage clause to be attached to the insurance policy on the bank's representation (whether true or untrue) that it had authority from the Atwells so to do, did not alter the circumstance that at the time the bill of interpleader was filed, the bank had already instituted, and was then maintaining against the insurance company in a court of equity, its alleged claim to an equitable lien on the insurance policy's proceeds, regardless of the legal efficiency of the mortgage clause upon which it also relied as an alternative, nor the fact that the subject of the equitable claim being asserted at the suit of the bank was the same proceeds of the insurance policy which the insured was seeking to collect by a separate suit at law.

It is settled by many decisions that where a mortgagor binds himself by a covenant in the mortgage, or otherwise, to insure the mortgaged premises for the better security of a mortgagee and his assigns, the latter will have a lien on any money that may become due on the policy taken out by the mortgagor, to the extent of the mortgagee's (or his as-

signee's) interest in the insured property destroyed. Wheeler v. Factors' & T. Ins. Co., 101 U. S. 439, 25 L. Ed. 1055; Grange Mill Co. v. Western Assurance Co., 118 Ill. 396, 9 N. E. Rep. 274; Cromwell v. Brooklyn, Fire Ins. Co., 44 N. Y. 42, 4 Am. Rep. 641; Cooley's Briefs on Insurance, 6290.

At the same time the insurance company's bill for interpleader was brought, the bank, relying upon the rule of law stated above, had brought its bill of complaint in a court of equity, naming the insurance company as a defendant and seeking to enforce as against such insurance company, its *alleged* equitable claim to the proceeds of the policy issued to the Atwells, relying on an alleged insurance procurement mortgage covenant of the Atwells as a basis for its equitable claim. The claim thus *asserted* by the bank's bill of complaint, was one of equitable cognizance, admitting *arguendo* the possibility, or even likelihood, that at final hearing the Chancellor would deny the bank's claim on its merits in the light of the law and the evidence developed pertaining to it.

Whether the bank's asserted equitable right was well founded or not could be determined only after trial. The result of such a trial was not required to be forecast or assured in advance by the insurance company in the allegations of its bill of interpleader, in order to entitle it to maintain its suit, where the controversy was otherwise well pleaded as one in interpleader.

The origin of each claim asserted against the insurance company was. pleaded as a single *indebtedness* of the complainant insurance company arising under one and the same policy of fire insurance that had been issued by it; the bank could recover on its equitable claim only to the exclusion of the Atwells against whom the bank was seeking to en-

force its equitable lien on any proceeds arising from the Atwell insurance policy as a common source; the insurance company was admittedly unconcerned with which claimant was entitled to prevail in sequestering and enjoying the common source fund represented by the insurance proceeds which it tendered into court; and the insurance company had incurred no independent liability to either the bank or the Atwells in its issuance of the mortgage clause insofar as the equitable lien theory of the bank was in issue, because the existence of such a lien as was claimed would presuppose the convenanted acquiescence of the Atwells therein, while the negative of such asserted lien would result in a decree against the bank effectually destroying its right to rely upon the mortgage clause as an independent contract with the insurance company, because the right to have such an independent contract with the insurance company in the circumstances of this case was predicated on its asserted equitable lien of the bank on insurance that might be taken out by the mortgagor for the benefit of the mortgagee or his assigns, in accordance with the stipulations of the mortgage.

We therefore hold that the insurance company's interpleader was well founded under the authorities which have enunciated the law controlling the right to have and maintain such bills. 4 Pomeroy's Equity Jurisprudence, 2638, Sec. 132; Fogg v. Goode, 78 Fla. 138, 82 Sou. Rep. 614; Florida East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 Sou. Rep. 622. So the motion to dismiss the bill of interpleader was properly overruled.

On the merits of the claims interpleaded the right to the proceeds of the policy is in the Atwells unless there was a showing by the bank that the rights of the Atwells had come to it in some lawful manner.

To decide whether or not the bank ever acquired an equitable lien on the proceeds of the policy, it must first be determined there was an agreement to insure contained in the Atwell's original mortgage.

From the exhibit attached to the record as a copy of the mortgage and marked "Exhibit B," it is to be seen that in the alleged covenant to insure, all blanks were filled in by typewriter except as to the amount of insurance to be procured. In that covenant, the word "mortgagor" was pluralized by typing "s" thereafter. In two separate places the word "he" was made "they" by prefixing "t" and suffixing "y" thereto. In still another place the word "his" was inserted.

From these typed insertions and alteration of the printed document, it must be concluded that it was the intention of the mortgagor to agree to insure the mortgaged property for the mortgagee's benefit though the amount was not named. The mortgagors are protected in such construction of the disputed covenant, in that no amount greater than the interest of the mortgagee may be paid the mortgagee out of the proceeds, because it is provided in this clause in the mortgage that the insurance is payaable to mortgagee or his assigns only "as his interest may appear."

The intention that, if and when possible, the mortgaged premises were to be kept insured at all times, is evidenced by the provision that the mortgagee could procure insurance and add it to the mortgage debt in case mortgagors failed to insure.

If the mortgagors are bound by covenant to insure for the better security of the mortgagee, the latter will have a lien on the money due on the policy, to the extent of the mortgagee's interest. See: Wheeler v. Factors' & T. Ins. Co., 101 U. S. 439, 25 L. Ed. 1055. And after notice by

mortgagee to the insurance company, it cannot pay the loss to the insured until the rights of parties have been adjusted. See: Grange Mill Co. v. Western Assurance Co., 118 Ill. 396, 9 N. E. Rep. 274.

Where there was a covenant in the mortgage to insure improvements for the benefit of the mortgagee and such insurance was effected, the improvements were destroyed by fire while insurance was in force, the mortgagee was held to have acquired an equitable lien upon the proceeds of the policy for the amount of the mortgage debt. See: Frensley Bros. Lbr. Co. v. Fireman's Fund Ins. Co., 104 Okla. 8, 229 Pac. Rep. 598.

In our view, the clear intention of the parties, as gleaned from the mortgage, was that insurance was to be procured in some amount for the mortgagee's protection, when and as procurable. The maximum amount that could be required was the extent of mortgagee's interest in the premises; while the minimum might have been some nominal sum. In view of the blank amounts left in the otherwise valid covenant to procure and keep insurance, parol evidence might be used to explain how much insurance was intended to be carried on the improvement, as well as to explain the circumstances surrounding the making of the agreement (Holmes v. Kilgore, 89 Fla. 194, 103 South. Rep. 825), but could not be used to show that there was no covenant to insure at all in view of the fact that such covenant actually was incorporated. Schmitt v. Bethea, 78 Fla. 304, 82 Sou. Rep. 817.

The final decree was rendered on the basis that the answer of the Atwells was insufficient as a defense to the claim of the bank. Inasmuch as the answer undertook to set up as a defense the denial that there was any covenant to insure at all, instead of putting in issue the amount of insur-

ance agreed upon, the answer did not make out a defense to the claim. So the final decree of the Chancellor should be affirmed.

Affirmed.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.