**In re Jerry Lee GILLEY, Debtor.**

**Bankruptcy No. 96–16913–8G2.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 8, 1999.

Bernard J. Morse, Morse, Berman & Gomez, P.A., Tampa, FL, for Debtor.

Terry E. Smith, Bradenton, FL, trustee.

Lori A. Heim, Mason & Associates, P.A., Clearwater, FL, for United States of America.

### ORDER ON MOTION TO DETER-MINE SECURED STATUS PURSU-ANT TO SECTION 506 OF THE BANKRUPTCY CODE

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Determine Secured Status Pursuant to Section 506 of the Bankruptcy Code filed by the Debtor, Jerry Lee Gilley. In the Motion, the Debtor asserts that the United States of America (Farmers Home Administration) filed a secured proof of claim in the amount of $413,924.01, and that "the value of the property which secures such claim has a market value significantly less than the amount of the Proof of Claim Filed." Consequently, the Debtor requests that this Court value the collateral of the United States of America (Farmers Home Administration) and determine which portion of the claim is secured and which portion of the claim is unsecured.

The United States of America, acting through Farm Service Agency f/k/a Farmers Home Administration, United States Department of Agriculture (FSA), filed a written response to the Motion and asserted that its claim is fully secured. The amended proof of claim filed by the FSA is in the amount of $413,924.01, and states that it is based on a "Real Estate Mortgage/Note." The debt is secured by a mortgage on certain real property, including real property in Pasco County, Florida. The parties indicate that when the mortgage was entered, the value of the proper-

ty supported the amount of the debt. In the 1980's, the mortgagor applied the chemical fungicide Benlate to the property. The fungicide damaged the property, and the parties agree that the value of the real property is now less than the amount of the debt. The mortgagor sued the manufacturer of the fungicide for the damage to the property, and entered a settlement pursuant to which the manufacturer of the fungicide paid a substantial amount to the mortgagor. The parties also indicate that the value of the real property plus the proceeds of the settlement exceed the amount of the mortgage debt.

The primary issue at this point in the proceeding is whether the proceeds of the settlement with the manufacturer of the fungicide constitute security for the obligations owed by the Debtor and Doris Gilley to the FSA under the loan documents.

The FSA filed a Memorandum regarding the extent, validity, and value of its secured claim. In the Memorandum, the FSA states that the parties have stipulated to the following facts:

1.  Doris Gilley, the Debtor's mother, executed sixteen promissory notes in favor of the FSA between July 1, 1981, and June 25, 1991.

2.  The Debtor executed ten promissory notes in favor of the FSA between February 19, 1988, and June 25, 1991.

3.  The Debtor and Doris Gilley executed two mortgages and three mortgage extension agreements in favor of the FSA, which were recorded in the public records of Pasco County, Florida, and Collier County, Florida.

4.  The Debtor and Doris Gilley "were plaintiffs in a lawsuit against E.I. DuPont de Nemours Co. ("DuPont"), arising from the use of Benlate on the parcels of real property owned by the Gilleys in Pasco County, and described in FSA's mortgages." (FSA's Memorandum, ¶ 7).

5.  "The Gilleys obtained a sum from DuPont in settlement of the lawsuit." (FSA's Memorandum, ¶ 8).

In the Memorandum, the FSA also states that the total amount received by the Gilleys pursuant to the settlement agreement with DuPont was $1,085,000. Of the total settlement amount, ninety percent, or the sum of $976,500, was payable upon the execution of a settlement release by the Gilleys. The remaining ten percent, or $108,500, is payable upon the second anniversary of the settlement. The Memorandum further recited that attorney's fees and costs to be deducted from the total settlement amount were estimated at $435,976, so that the Debtor and Doris Gilley received a net amount from the settlement in the approximate sum of $649,024. The Debtor has conceded that the figures contained in FSA's Memorandum are generally correct.

The Real Estate Mortgage provides that the property granted by the Debtor and Doris Gilley to secure payment of the obligations owed to the Government consisted of the real property located in Pasco and Collier Counties, as legally described in the Mortgage:

*together with all rights, interests,* easements, hereditaments and appurtenances *thereunto belonging, the rents, issues, and profits thereof* and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, *and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein—* all of which are herein called "the property".

(Emphasis supplied). The mortgage also contains a provision by which the Debtor

agrees to keep the property insured (paragraph 8), and a separate provision by which the Debtor agrees "not to . . . cause or permit waste, lessening or impairment of the security covered hereby" (paragraph 9).

The Debtor contends that his cause of action against DuPont, together with the proceeds of the cause of action, constitute personal property owned by the Debtor and Doris Gilley. The Debtor further contends that the Mortgage executed by the Gilleys grants a lien only on real property and interests in real property, and does not extend to personal property of the Gilleys. Consequently, the Debtor asserts that "the mortgage of Farm Service Agency does not create a lien on the personal property which consists of the cause of action and the proceeds of the settlement with DuPont." (Debtor's Memorandum, p. 2). In support of this position, the Debtor cites *In re Schrewe*, 108 B.R. 116 (E.D.La. 1989). The Debtor also contends that the Mortgage provides that the lien extends to payments to the Debtor on account of a sale, lease, transfer, or conveyance of the real property, but that the Debtor's claim against DuPont does not amount to such a sale or transfer of the mortgaged property, and therefore does not fall within the terms of the parties' contract.

In response, the FSA contends that the proceeds of the settlement with DuPont represent an "interest" in the property within the meaning of the Real Estate Mortgage, and therefore are included in the FSA's collateral. Additionally, the FSA asserts that the proceeds are analogous to a condemnation award, which constitutes compensation for any reduction in the value of a landowner's property by a governmental unit or public agency. The FSA cites *Investors Syndicate of America, Inc. v. Dade County*, 98 So.2d 889 (Fla. 3d DCA 1958) regarding such condemnation awards. The FSA also asserts that the proceeds are analogous to the proceeds of a hazard insurance policy, which may be viewed as an interest in the real property

which serves as collateral. The FSA cites *In re Spano*, 161 B.R. 880 (Bankr.D.Conn. 1993) to support its contention in this regard. In either case, the FSA asserts that its lien attaches to the proceeds of the settlement with DuPont.

## Discussion

■ The Debtor is a farmer who previously grew strawberries and other fruits and vegetables on his property in Pasco County. In the 1980's, the Debtor sprayed Benlate, a chemical fungicide, on his property. Benlate was manufactured by DuPont. The property was contaminated as a result of the use of Benlate, and is no longer suitable for growing either strawberries or the other crops previously raised on the property. The Debtor and his mother, as well as other farmers, filed an action against DuPont seeking compensation for the damage to their property caused by the application of Benlate. A settlement ultimately was reached with DuPont, and the funds at issue in this case represent the proceeds of that settlement.

### A. The rationale of *Schrewe* does not apply to the circumstances of this case.

The Debtor asserts that his claim against DuPont is properly characterized as "personal property," and that the mortgage of the FSA does not extend to such personal property. The Debtor cites *In re Schrewe*, 108 B.R. 116 (E.D.La.1989) in support of his position that a cause of action for damage to real property is a personal property right, and not subject to a mortgage on real property. In *Schrewe*, American Savings and Loan (American) had loaned money to the debtor to construct an office building on the debtor's real property, and the debtor had granted American a mortgage on the property to secure the loan. After entering the mortgage, the office building was constructed. The debtor subsequently filed suit against the architect and engineer, alleging that the office building was defectively designed and constructed, to recover the costs of repair. *In re Schrewe*, 108 B.R. at 117.

452

During the pendency of the debtor's bankruptcy case, American filed a Motion for Recognition of Creditor's Interest in Certain Proceeds of Lawsuit Owned by Debtor. The motion was filed on the basis that the cause of action for damages to the debtor's property was "physically related" to the underlying real property and therefore subject to American's mortgage. An unsecured creditor in the debtor's bankruptcy case opposed the motion and argued that the cause of action was a personal right of the debtor that was separate from the mortgaged property. *Id.* at 117.

The District Court in *Schrewe* applied Louisiana law, and quoted a comment to the Louisiana Civil Code as follows:

> Louisiana courts have held that ... damages due to the owner of a thing for its partial destruction or for an interference with the owner's rights, belong to the person who was owner at the time of the expropriation, destruction, or interference. These are personal rights that are not transferred to a successor by particular title without a stipulation to that effect.

The comment follows Article 1764 of the Louisiana Civil Code, which is entitled "Effects of real obligation," and which pertains to the transfer of obligations which attach to a "thing." The District Court concluded from the comment that, under Louisiana law, a cause of action for damage to property is a personal right, not a real right, and that American's mortgage did not create a security interest in the proceeds of the cause of action. *Id.* at 117–18.

Florida law is not necessarily inconsistent with the holding of *Schrewe.* In *Department of Transportation v. Burnette,* 384 So.2d 916 (Fla. 1st DCA 1980), Florida's First District Court of Appeal considered the entitlement to compensation for a "taking" by the Department of Transportation. The Court stated:

> [A] right to compensation vests in the person owning the property at the time of such interference. *This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right.* The theory is that where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to compensation. When the original owner conveys what remains of the realty, he does not transfer the right to compensation for the portion he has lost without a separate assignment of such right. If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser would receive a windfall. Presumably, the purchaser will pay the seller only for the real property interest that the seller possesses at the time of the sale and can transfer.

*Department of Transportation v. Burnette,* 384 So.2d at 920, quoting *Brooks Inv. Co. v. City of Bloomington,* 305 Minn. 305, 232 N.W.2d 911, 918 (1975) (Emphasis supplied). The rationale for the rule is evident, since any subsequent transferee would acquire the property in its already-damaged condition, and therefore would not have suffered any loss as a result of the occurrence of the damage.

These cases, however, stand only for the proposition that a cause of action for damage to real property is a personal right to the extent that it belongs to the owner of the property at the time that the damage occurred, and not to any successor owner of the property. Consequently, the rationale of *Schrewe* does not necessarily apply to the circumstances of this case, and the Court will not find on the basis of *Schrewe* that the cause of action is not covered by the FSA's mortgage.

**B. The FSA's lien attaches to the proceeds of the Debtor's settlement with DuPont in accordance with the terms of the mortgage contract.**

The Court determines that the FSA's lien attaches to the proceeds of the Debt-

or's settlement with DuPont on the basis of the express terms of the mortgage contract. Specifically, the contract provides that the property subject to the mortgage consists of the real property described in the mortgage, "together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging." For the reasons set forth below, the Court concludes that the claim against DuPont, and the proceeds of that claim, constitute a right or interest belonging to the real property within the meaning of the mortgage.

▆▆▆ In Florida, a mortgagee has a right to recover from a third party for damage to the security for the mortgage. This right is not an unrestricted right to recover for any damage to the property, but exists only in the context of the mortgage transaction. The Fifth Circuit Court of Appeals considered this question in *Allstate Finance Corporation, et al. v. Zimmerman*, 272 F.2d 323 (5th Cir.1959).[1] Under the facts of that case, because the mortgage previously had been foreclosed and the mortgage debt had been satisfied, the court concluded that the mortgagee did not have a cause of action for damage to the property which occurred prior to the foreclosure. Regarding Florida mortgage law in general, however, the Court stated:

> If plaintiff before the foreclosure sale, or afterwards if the debt had not been satisfied thereby, had brought a suit alleging that its security was diminished and it had sought recovery of the damage, not to the property but to its security, in Florida and generally elsewhere, it would certainly have stated a claim....

> If, before satisfaction of the mortgage by purchase at the foreclosure sale, plaintiff had alleged a cause of action arising to it as mortgagee at the time of the trespasses as a result of the diminution of its security, as it could have done, ... the action would not have been, as it

was in this suit, for the diminution in value of the property. It would have been for, and its damages would have been limited to, damages measured by the impairment of its ability to collect its debt....

In 59 C.J.S. Mortgages note 4 supra, there is to be found a full and careful statement, supported by a wealth of authorities, of the general principles controlling here. Perhaps the best statement of the law controlling the precise situation this case presents in [sic] that in *Sloss–Sheffield Steel & Iron Co. v. Wilkes*, 231 Ala. at page 515, 165 So. at page 767, 109 A.L.R. at page 389, as follows:

> "When damage occurs before foreclosure, the right of action by the mortgagee whatever it may be, or the nature of the action, is only for the recovery of an amount not exceeding the mortgage debt. The right of action is collateral to the debt, and as security for it. The mortgagee may pursue any course he pleases to collect the debt, whether it be a suit for a personal judgment against the debtor, or for damages against one who has wrongfully converted the mortgaged property, or otherwise destroyed his rights in it, or for a foreclosure.

> "And he may do them all at the same time. But when he once collects his debt, by any one of those proceedings, or by a voluntary payment of it, he cannot pursue any other remedy. They are all but means to accomplish one purpose, and when that is accomplished, all the remedies, not used in so doing, are terminated...."

*Allstate Finance Corporation, et al. v. Zimmerman*, 272 F.2d at 325–26. Pursuant to Florida law, therefore, a mortgagee may sue a third party for damage to the mortgaged property, to the extent of the mortgagee's rights in the mortgaged property.

*City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981).

---

■ In this case, the mortgage provides that the mortgagor "covenants and agrees" not to cause or permit the lessening or impairment of the property, and the mortgagee therefore has a cause of action against the mortgagor if such impairment occurs. As indicated above, under Florida law the mortgagee also has a cause of action against a third party for damage to or diminution of the property to the extent that the damage or diminution impairs the mortgagee's security. The mortgagee does not have a cause of action against a third party for damage to the property independent of the mortgage transaction. To the extent that the damage impairs the security for a mortgage, however, the mortgagee has a cause of action for, and therefore an interest in, an award based upon such damage.

In this case, the proceeds of the Debtor's settlement with DuPont represent the value of the damage to the property. It appears that the FSA as mortgagee could have brought an action for the damage to the property, or joined in the Debtor's action, to the extent that the damage impaired its security. Consequently, the Court concludes that the cause of action against DuPont, together with the proceeds of that cause of action, constitute an interest belonging to the property within the meaning of the mortgage contract, and further concludes that the FSA's lien therefore attaches to the proceeds in accordance with the specific terms of the contract.

C. **The FSA is entitled to an equitable lien on the proceeds of the Debtor's settlement with DuPont.**

■ The Court also concludes that the FSA is entitled to an equitable lien on the proceeds of the Debtor's settlement with DuPont. The mortgage provides that the Debtor agrees "not to ... cause or permit waste, lessening or impairment of the security" covered by the mortgage. It appears that under Florida law an equitable

lien may be predicated on such covenant of a mortgagor if the property is damaged.

The Florida Supreme Court has described the rights of a mortgagor and a mortgagee to an insurance payment where the mortgage requires the mortgagor to maintain insurance on the property and there is damage to the property:

> It is settled by many decisions that where a mortgagor binds himself by a covenant in the mortgage, or otherwise, to insure the mortgaged premises for the better security of a mortgagee and his assigns, the latter will have a lien on any money that may become due on the policy taken out by the mortgagor, to the extent of the mortgagee's (or his assignee's) interest in the insured property destroyed....

> . . .

> To decide whether or not the bank ever acquired an equitable lien on the proceeds of the policy, it must first be determined whether there was an agreement to insure contained in the [mortgagors'] original mortgage.

> . . .

> If the mortgagors are bound by covenant to insure for the better security of the mortgagee, the latter will have a lien on the money due on the policy, to the extent of the mortgagee's interest....

> *Where there was a covenant in the mortgage to insure improvements for the benefit of the mortgagee and such insurance was effected, the improvements were destroyed by fire while insurance was in force, the mortgagee was held to have acquired an equitable lien upon the proceeds of the policy for the amount of the mortgage debt ....*

*Atwell, et al. v. Western Fire Ins. Co. of Fort Scott, Kan., et al.*, 120 Fla. 694, 702–706, 163 So. 27, 30–32 (1935). (Emphasis supplied.) Consequently, pursuant to the Florida Supreme Court's decision in *Atwell*, if a mortgagor agrees to keep the

property insured, as in this case, the mortgagee is entitled to an equitable lien on any proceeds of the insurance policy if the property is damaged or destroyed.

Similarly, in the mortgage at issue in this case the Debtor specifically agrees not to "cause or permit waste, lessening or impairment of the security" covered by the mortgage. The Debtor applied the chemical fungicide to the property, and that action diminished the value of the property and resulted in an impairment of the security. The Debtor entered the settlement with the manufacturer of the fungicide which resulted in a payment to the Debtor as compensation for the damage to the property. The treatment of the proceeds of the settlement in compensation for the damage to the property which impaired the security where there was the covenant not to cause or permit impairment of the security should be similar to the treatment of the proceeds of the insurance policy in *Atwell* where there was a covenant to maintain insurance. Accordingly, the Court concludes that the FSA is entitled to an equitable lien on the proceeds of the Debtor's settlement with DuPont, to the extent of the amount of the mortgage debt.

The Court also notes that where a mortgagee is entitled to condemnation proceeds and part of the mortgaged property is condemned, the mortgagee is entitled to so much of the condemnation award as is necessary to compensate him for his interest in the part taken. *Investors Syndicate of America v. Dade County, et al.,* 98 So.2d 889 (Fla. 3d DCA 1957).

Finally, the Court notes that the Debtor has claimed the settlement proceeds as exempt pursuant to Florida's Constitutional exemption for homestead real property. In conjunction with a challenge to that claim of exemption, the Debtor testified that the proceeds are segregated and will be reinvested in the property to rehabilitate the property. Contemporaneously with this order, the Court has overruled the Chapter 13 trustee's objection to that claim of exemption and has allowed the proceeds to be exempt from the assets of the estate and from the claims of unsecured creditors. Consistently, in this order the Court concludes that the settlement proceeds are subject to the lien of the homestead mortgagee to the extent of the mortgage debt.

### Conclusion

In conclusion, the Court determines that the proceeds of the Debtor's settlement with DuPont constitute security for the obligations owed by the Debtor to the FSA. First, the Court finds that the proceeds are subject to the mortgage lien in accordance with the specific terms of the contract. The contract provides that the mortgage covers the real property described in the mortgage, together with all rights and interests belonging to the property. Since the FSA could have commenced an action, or joined in the Debtor's action, to recover for damage to the property pursuant to Florida law, the Court determines that the cause of action and its proceeds constitute a right or interest belonging to the property. Consequently, the proceeds are subject to the FSA's lien in accordance with the mortgage contract.

Additionally, the Court finds that the FSA is entitled to an equitable lien on the proceeds. Given the specific agreement in the mortgage not to impair the security, and since the settlement proceeds represent compensation for damage to the property which impaired the security, the Court concludes that the FSA acquired an equitable lien on the proceeds, consistent with the holding of the Supreme Court of Florida in *Atwell.*

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Determine Secured Status Pursuant to Section 506 of the Bankruptcy Code filed by the Debtor, Jerry Lee Gilley, is granted as set forth in this Order.

2. The claim of the United States of America, acting through Farm Service

456

Agency f/k/a Farmers Home Administration is secured by the real property described in the Real Estate Mortgage, and also by the proceeds of the Debtor's cause of action against E.I. DuPont de Nemours Co. arising from the use of Benlate on the parcels of real property described in the Real Estate Mortgage, to the extent of the amount of the mortgage debt.