PPG INDUSTRIES, INC., Plaintiff-Appellee,

v.

The HARTFORD FIRE INSURANCE COMPANY et al., Defendants,

and

United States of America, Defendant-Appellant.

No. 93, Docket 75–6001.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1975.

Decided Feb. 13, 1976.

Jacob F. Gottesman, New York City, for plaintiff-appellee.

Patrick H. Barth, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty. for the Southern District of New York, David P. Land, Steven J. Glassman, Asst. U. S. Attys., New York City, of counsel), for defendant-appellant.

Before MOORE and TIMBERS, Circuit Judges, and COFFRIN,* District Judge.

\* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

COFFRIN, District Judge:

This case involves a secured transaction priority dispute between PPG Industries [hereinafter PPG], the secured party, and the United States Government, holder of a federal tax lien. In 1970, PPG entered into a security agreement with Car Color, Inc., the debtor in this case. The agreement gave PPG a security interest in all of the debtor's inventory and equipment. It further provided that Car Color was to insure the secured property, paying all of the costs thereof and assigning to PPG all right to receive the proceeds of such insurance. The loss proceeds were to be payable to PPG which, in addition, was also specifically authorized to "endorse any draft for such proceeds . . ." This security agreement, dated September 28, 1970, was filed by PPG on October 8, 1970.

Car Color subsequently obtained from the Hartford Insurance Company a $25,000 insurance policy which did not name PPG as loss-payee. On December 23, 1971, Car Color's premises were destroyed by fire. Hartford disclaimed liability on the basis of an arson defense. Car Color sued Hartford and on April 25, 1973 won a $7,354.29 judgment for all losses resulting from the fire. Damages were awarded retroactively to April 3, 1972, the date that proof of loss had been submitted to Hartford. On June 26, 1973, Hartford was served with an execution in connection with a $12,300.90 default judgment which PPG had obtained against Car Color on April 14, 1972.

The United States claims a portion of the $7,354.29 insurance fund on the basis of two tax assessments which were imposed as a result of Car Color's failure to pay its federal withholding tax. An assessment of $1,252.25 was made on December 10, 1971, and another for $825.85 was made on March 27, 1972. Tax liens for these assessments were properly filed on May 4, 1972. The Government, therefore, seeks a total of $2,078.10. The actual amount available for

distribution is $4,200.04,[1] and PPG claims that it is entitled to this amount in its entirety.

### The Proceedings Below

The bankruptcy magistrate, relying upon the "unmistakably clear" language of the security agreement, held PPG to be a valid assignee of the fire insurance proceeds, and concluded on this basis that it had a "valid legal right to the proceeds of the policy." According to the Magistrate, "PPG's assignment, theretofore equitable only, became a full-fledged legal and 'choate' assignment immediately upon the happening of the fire." On appeal to the district court, Judge Conner, disagreeing with this analysis, stated that "[t]he law in New York is well settled that an assignment of a future interest in the proceeds of a claim is equitable only, and does not become a legal assignment until the proceeds have come into existence." Even so, Judge Conner affirmed the magistrate's decision on another ground by finding that at the time of the Government's filing in May, 1972, PPG had a valid and "choate" security interest in the insured property, and that under New York law this interest had been transferred to the potential insurance proceeds when the property was destroyed by fire.

### 1.· The Validity of PPG's Security Interest in the Insurance Proceeds.

█ This question is obviously a threshold issue since if the security interest itself is invalid or nonexistent there is no need to resolve any priority conflict. The Government refers to two sections of New York's Uniform Commercial Code in support of its position that PPG does not have a valid security interest in such proceeds. U.C.C. § 9–104(g) provides that Article 9 (Secured Transactions) does not apply "to a transfer of an interest or claim in or under any policy of insurance . . . ."[2] Although there is some authority which would support a literal reading of this provision, *see*

*National Bedding & Furniture Industries, Inc. v. Clark,* 11 U.C.C.Rep. 206, 208 (Ark. Sup.Ct.1972); *In re Levine,* 6 U.C.C.Rep. 238, 242 (D.C.Conn.1969), it should be apparent that this exclusion applies only to situations where the parties to a security agreement attempt to create a direct security interest in an insurance policy by making the policy itself the immediate collateral securing the transaction. For example, § 9–104(g) would be triggered in cases where a debtor uses his life insurance policy as a means for securing a debt owed to the insurer. In contrast, there is no basis for concluding that the statutory exclusion was intended to extend to security agreements which both create a direct security interest in inventory and /or equipment and require the debtor to provide his creditor with further protection by insuring the collateral. In rejecting such an argument, a leading treatise has made the following observation:

> There have been some cases suggesting that since subsection 9–104(g) excludes insurance from the general coverage of Article 9, insurance payments for damaged collateral cannot be proceeds under 9–306. While 9–104(g) might have been more artistically phrased, this argument proves too much; bank deposits are not generally within Article 9 either, but clearly bank deposits can constitute 9–306 proceeds. A new 9–306(1) covers this problem: insurance payments are proceeds, except to the extent that they are payable to one not a party to the security agreement.

Coogan, Hogan, Vagts, Secured Transactions Under the Uniform Commercial Code § 3A.03[c], at 207 (1974) (footnotes omitted).

Even if § 9–104(g) is inapplicable, the next question is whether PPG's security interest in Car Color's inventory and equipment became a § 9–306 security interest in "proceeds" when the debtor's collateral was destroyed by fire. (The security agreement provided that the security interest was to

---

1. The original fund of $7,354.29 was reduced to $4,200.04 by virtue of earlier distributions which are not in dispute.

2. N.Y. Uniform Commercial Code § 9–104(g) (McKinney 1964).

continue in the "proceeds" resulting from the inventory). Under § 9–306(1), " '[p]roceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected, *or otherwise disposed of.*" [3] (emphasis added). No New York case has ruled on whether fire insurance payments are "proceeds" under § 9–306(1), but at least three decisions in other jurisdictions have held that such funds are not "proceeds" within the meaning of this section. *In re Levine,* 6 U.C.C.Rep. 238, 241 (D.C.Conn. 1969); *Quigley v. Caron,* 247 A.2d 94, 96 (Me.1968); *Universal CIT Credit Corp. v. Prudential Investment Corp.,* 101 R.I. 287, 222 A.2d 571, 574–575 (R.I.1966). These decisions reasoned that the language of § 9–306(1) does not extend to the involuntary destruction of collateral, and that insurance payments which compensate the loss of such collateral do not qualify as proceeds since the obligation to pay is derived from a personal surety contract rather than from the insured property itself. In *Firemen's Fund American Ins. Co. v. Ken-Lori Knits, Inc.,* 399 F.Supp. 286, 290–291 (E.D.N.Y.1975), these cases were distinguished in a situation where the two security agreements under consideration specifically covered proceeds, a rider to the second policy assigned all insurance payments to the secured party, and the policy itself contained a clause which made the loss payable to the secured party. Under such circumstances, where the parties' clear intention was to give the secured party the benefit of the insured proceeds, the district court held that § 9–306(1) should be construed to include such proceeds. *Id.,* at 290–291.

The district court below, despite the absence of a similar loss-payee clause, specifically rejected the reasoning of the *Quigley* and *Universal C.I.T. Credit Corp.* decisions, and decided that in this case any construction of § 9–306(1) which does not include insurance within the scope of the term "proceeds" would contravene the express intent of the parties. Furthermore, the Court pointed out that in 1972 the Commissioners on Uniform State Laws amended 9–306(1) to provide that "insurance payable by reason of loss or damage to the collateral is proceeds . . . ." As the reporter's commentary to this amendment indicates, the "new . . . sentence . . . is intended to overrule various cases to the effect that proceeds of insurance on collateral are not proceeds of the collateral." Although this amendment has not yet been adopted in New York, it is a persuasive indication of the effect which § 9–306 was originally intended to have. Since no New York court has ruled on this question, the fact that the state legislature had not yet enacted this amendment does not preclude a federal court from rendering a decision which is consistent with the original intention underlying § 9–306. For this reason, the district court was correct in holding that PPG had a security interest in the proceeds of the insurance policy.

*2. The Priority Conflict.*

The resolution of priority conflicts involving federal tax liens is a matter of federal law requiring an interpretation of 26 U.S.C. § 6323. *See, e. g., Aquilino v. United States,* 363 U.S. 509, 513–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The Government argues that PPG's interest in the proceeds of the insurance policy is not protected by 26 U.S.C. § 6323(a) because the proceeds did not come into existence until April 25, 1973 when Car Color won a judgment on the policy against Hartford. By that time, the Internal Revenue Service had already filed its tax assessment notices. 26 U.S.C. § 6323(a) provides as follows:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

The Government contends that PPG cannot rely upon this section because § 6323(h)(1), which defines the term security interest, requires that the property to which the interest attaches be in actual existence at

---

**3.** N.Y. Uniform Commercial Code § 9–306(1) (McKinney 1964).

the time that rights are asserted under § 6323(a):

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, *the property is in existence* and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1) (emphasis added). Thus, in *Federal Insurance Co. v. Billy's Burgers,* an unreported decision,[4] the interests of a secured party in the proceeds of an insurance policy were specifically subordinated to the extent that the proceeds came into actual existence after the filing of a federal lien. Arguably, the "actual existence" requirement is further buttressed both by some legislative history [5] and by the fact that Congress apparently gave priority to certain types of non-existent property in 26 U.S.C. § 6323(c).

▮ The district court, however, gave careful consideration to this interpretation of § 6323(h)(1) as applied to insurance proceeds, and rejected it under "the argument that the property which was [originally] the subject matter of the security agreement (here, the inventory), was clearly in existence, and [therefore] . . . the proceeds of the insurance are merely the collateral in another form. See 1 Coogan, Hogan & Vagts, *supra* § 3A.03[c]." Although appellant's construction of § 6323(h)(1) is persuasive in a technical sense, the district court's interpretation of that provision is the only one which makes sense from a policy standpoint. Admittedly the proceeds did not come into existence until a judgment was obtained against Hartford, however, the *original* security interest was not in the after acquired proceeds but in the debtor's inventory and equipment. When this was destroyed, PPG's security interest continued under 9–306(1), first in the existing insurance policy and then in the funds which were paid out of that policy. If anything, the "existence" requirement of § 6323(h)(1) is satisfied by the *existence* of an available insurance policy.[6] Any contrary result would penalize the very party responsible for the existence of this fund in the first place. As PPG rightfully points out, had Car Color not taken out an insurance policy, the Government would have had no assets against which its two claims could have been satisfied. Furthermore, the tax lien would clearly have been subordinate to PPG's security interest in the inventory and equipment if there had been no fire. *See* § 6323(a). There is no reason, statutory or otherwise, why the Govern-

---

4. 72 Civ. 1098 (S.D.N.Y. February 16, 1973).

5. For example, the following legislative history is in point:

> [Section 6323(c)] provides that security interests arising under commercial transactions financing agreements . . . entered into before tax lien filing in certain cases are to be protected against Federal tax liens, even though the funds are advanced under the agreement, or the property referred to in the agreement comes into existence, after the tax lien filing.
>
> \* \* \* \* \* \*
>
> [P]rotection is afforded only . . . where the inventory, accounts receivable, etc., are acquired before the 45 days have elapsed.

Senate Report No. 1708, Federal Tax Lien Act of 1966, 89th Cong., 2d Sess., P.L. 89–719, 1966 U.S. Code Congressional and Administrative News, pp. 3722, 3728–29.

> For Federal tax purposes, a security interest is not considered as existing until the conditions set forth here are met even though local law may relate a security interest back to an earlier date and even though it might be an effective security interest as of the earlier date under the Uniform Commercial Code.
>
> *Id.* at 3734.

6. This analysis is consistent from a policy and statutory perspective with the exceptions for non-existent property which are listed in 26 U.S.C. § 6323(c). Alternatively, analyzing this case under § 6323(c), it would seem to fit within the statutory exception as a "commercial transaction financing agreement" secured by inventory, with the insurance simply being a substitute for the inventory. See 26 U.S.C. § 6323(c).

ment's position should be improved at the expense of a secured party who merely sought to afford itself further protection by insisting that its debtor insure its collateral.[7]

The decision of the district court is affirmed.

---

**7.** Despite this analysis, the Court is not entirely convinced that the insurance policy taken out by Car Color was the specific one contemplated by the security agreement. A different result might obtain where the debtor in the ordinary course of business takes out an insurance policy for his own benefit. If the insurance policy is acquired in this manner and for this purpose, there is no reason why the loss proceeds should be made available to a creditor with a security interest in a debtor's inventory. By allowing him to recover the proceeds in such a case, the secured creditor would be given a windfall simply because of the happen-stance existence of an insurance policy. At best, such a secured party would only have an equitable lien which, at least in New York, would be subordinate to a subsequent tax lien filed before the proceeds actually came into existence. *See Harold Moorstein & Co. v. Excelsior Ins. Co.,* 25 N.Y.2d 651, 653, 306 N.Y. S.2d 464, 465 (1969). However, having stated this caveat, the Court is willing to accept the district court's stated conclusion that in this instance the insurance obtained by Car Color was specifically intended to be further security for PPG's lien.