**AETNA INSURANCE COMPANY**

v.

**TEXAS THERMAL INDUSTRIES et al.**

**No. TY–74–307–CA.**

United States District Court,
E. D. Texas,
Tyler Division.

Aug. 31, 1977.

Herbert Boyland, Kenley, Boyland, Hawthorn, Starr & Coghlan, Longview, Tex., for plaintiff, Aetna Ins. Co.

C. Houston Abel, Asst. U. S. Atty., Tyler, Tex., for defendant, Small Business Administration and IRS.

Dale Long, Tyler, Tex., for defendant, Texas Thermal Industries.

Foster T. Bean, Bean, Ford & Schleier, Kilgore, Tex., for defendant, Allied Citizens Bank.

Henry Schwartz II, Tyler, Tex., for defendant, Eileen Markman.

Jerry E. Bain, Tyner, Bain & Tyner, Tyler, Tex., for defendant, Associated Adjusters.

Charles F. Dickerson, Potter, Lasater, Guinn, Minton & Knight, Tyler, Tex., pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### STATEMENT OF THE CASE

STEGER, District Judge.

This is an interpleader action, brought under 28 U.S.C. § 1335, concerning the relative priority of various claims against the

insurance proceeds deposited in the Registry of the Court. To a large extent the facts have been stipulated to in this cause and the Court's chief function is to properly allocate the funds in question.

## FINDINGS OF FACT

1.

The jurisdiction of this Court over the parties and this cause of action is not disputed.

2.

On January 5, 1973, the Citizens Bank, Kilgore, Texas, in participation with Small Business Administration (hereinafter SBA) disbursed a loan in the amount of $200,-000.00 to Texas Thermal Industries, Inc., Kilgore, Texas.

3.

Texas Thermal Industries, Inc. (hereinafter TTI) was, on January 5, 1973, a corporation organized under the laws of the State of Texas with offices in Kilgore, Texas.

4.

The collateral for this loan, among other things, consisted of a first security interest in and to all inventory, accounts receivable and machinery and equipment.

5.

A financing statement was filed of record with the County Clerk of Gregg County, Texas, on January 15, 1973, under file No. 004767.

6.

The $200,000.00 loan has a current balance of $190,437.85 plus accrued interest since September 12, 1974.

7.

The terms of the loan authorization issued by SBA also required that hazard insurance be obtained on the mortgaged collateral with loss payee endorsements in favor of the Citizens Bank and SBA.

8.

On October 2, 1973, Aetna Insurance Company of Hartford, Connecticut issued an insurance policy to Texas Thermal Industries covering fire, extended coverage, and other hazards, being Number 960126, which policy was in the amount of $200,-000.00, with loss-payee endorsements in favor of the Citizens Bank-SBA.

9.

On June 15, 1973, the Citizens Bank, Kilgore, Texas, in participation with SBA, disbursed a loan in the amount of $150,000.00 to Texas Thermal Industries, Inc., Kilgore, Texas.

10.

The collateral for this loan, among other things, consisted of a security interest in all inventory, subject only to a prior lien outstanding in favor of Citizens Bank-SBA securing the $200,000.00 loan.

11.

A financing statement was filed of record with the County Clerk of Gregg County, Texas, on June 21, 1973, under file No. 065320.

12.

The loan authorization for this loan required Texas Thermal Industries to maintain 500 units of finished inventory under a bonded warehouse arrangement with the provision that 100% of the proceeds of the sale of any such units be applied to the inverse order of maturity of this loan. Said loan authorization also required that sufficient hazard insurance be obtained to cover such inventory, and that said hazard insurance policy have a loss payee endorsement in favor of Citizens Bank and SBA.

13.

The $150,000.00 loan had a balance of $109,885.16 as of June 24, 1974, plus accrued interest from such date.

14.

The $200,000.00 note and the $150,000.00 note collateral documents were assigned to SBA by the Citizens Bank on April 25, 1974.

15.

Texas Thermal Industries, Inc., established a warehouse arrangement with Citizens Bank and St. Louis Terminal Warehouse Company, both for their finished

goods inventory located at this plant site in Kilgore, Texas, and at their Houston, Texas, warehouse.

16.

The finished goods inventory located at the Houston warehouse was destroyed by fire on December 18, 1973.

17.

A controversy arose between the insurance company and Texas Thermal Industries, Inc., regarding the extent of the loss. After extensive negotiations between Aetna Insurance Company, Texas Thermal Industries, Inc., Citizens Bank, SBA, Associated Adjustment Bureau, Eileen Markman and Charles F. Dickinson, a stipulation was entered into wherein all interested parties agreed that the amount of loss was the sum of $175,000.00. This stipulation further provided that since there were a number of other claimants, including IRS, that the money would be deposited in the Registry of the Court in an interpleader action.

18.

Texas Thermal Industries incurred the following tax liabilities in the amounts and on the dates set out below and after due notice and demand, there still remains due and owing the outstanding assessed balance as shown plus interest as allowed by law:

| TYPE OF TAX | TAXABLE PERIOD ENDING | DATE OF ASSESS-MENT | AMOUNT ASSESSED | DATE NOTICE & DEMAND | ASSESSED BALANCE * | DATE NOTICE OF LIEN FILED (1) |
|---|---|---|---|---|---|---|
| Corp. Income | 09/30/71 | 02/11/74 | $122,232.49 (T) | 02/11/74 | $ 9,602.17 | 03/01/74 |
| WH–FICA | 06/30/73 | 09/03/73 | 8,716.31 (T) | 09/03/73 | 8,716.31 | 12/17/73 |
| WH–FICA | 12/31/73 | 02/01/74 | 10,331.22 (T) | 02/01/74 | 10,331.22 | 02/07/74 |
| FUTA | 12/31/73 | 02/01/74 | 1,276.77 (T) | 02/01/74 | 279.18 | 02/07/74 |
| | | 08/05/74 | 920.06 (T) | 08/05/74 | 920.06 | 11/18/74 |
| WH–FICA | 03/31/74 | 05/20/74 | 3,810.96 (T) | 05/20/74 | 3,810.96 | 07/01/74 |
| WH–FICA | 09/30/73 | 12/31/73 | 8,249.43 (T) | 12/31/73 | 8,249.43 | 01/25/74 |
| | | | | TOTAL | $42,744.48 | |

(T)  Denotes tax.
*  Plus interest as allowed by law.
(1)  Notices of lien filed with the Clerk of Court, Gregg County, Texas.

19.

By separate letter agreements dated August 27, 1975, SBA has entered into agreements with defendants, Nytco Services, Inc., Associated Adjusters, Inc., and Charles F. Dickerson, whereby SBA will pay to each said defendant an agreed sum owing by virtue of services rendered Texas Thermal Industries, Inc., in connection with the fire loss, each said sum to be paid out of that portion of the $173,000.00 on deposit in the registry of the Court, awarded SBA by the Court at the termination of this Court proceeding.

20.

Eileen Markman is and at all times relevant to this proceeding, has been the wife of Robert Markman, who was the president and chief operating officer of Texas Thermal Industries, Inc. Following the fire which destroyed the Houston warehouse of TTI, Robert Markman asked Eileen Markman to lend $16,000.00 of her separate funds to TTI to help pay immediate expenses and to keep it operating as a going concern. On December 28, 1973, Eileen Markman borrowed $16,000.00 from the bank. This was made in the form of two

loans, the collateral for which consisted of three certificates of deposit which she had in the bank and which were her separate property. One loan in the amount of $11,-000.00 was collateralized by certificates of deposit No. 1540 and 1544, dated September 7 and October 9, 1973. The other loan in the amount of $5,000.00 had as its collateral Certificate of Deposit No. 1168, dated May 30, 1973.

### 21.

The entire $16,000.00 proceeds of the loan was deposited to the TTI reserve account No. 10-1770-5, and was used by it to make payments on mortgaged vehicles and equipment that were in immediate jeopardy; to pay current and past payroll for plant employees; and to cover certain insufficient fund checks that were outstanding on December 28, 1973.

### 22.

As an inducement for the loan and as security for its repayment to Eileen Markman, TTI on December 27, 1973, executed an assignment of $11,000.00 of its rights to receive proceeds of the Aetna Insurance Policy No. 96-01-26 under the fire loss.

### 23.

The assignment together with a formal notice thereof was then mailed to Aetna.

### 24.

There is no evidence to show that Aetna received the formal notice of the loss-payee assignment to Eileen Markman of the $16,-000.00 portion of the insurance coverage or that Aetna Insurance Company made such a loss-payee endorsement to Eileen Markman prior to the fire on December 18, 1973.

## CONCLUSIONS OF LAW

### 1.

■ The federal rule for determining the relative priority between a federal lien and a state created lien is first in time is first in right. *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

### 2.

■ Resolving priority conflicts in which federal tax liens are involved, a matter of federal law, requires an interpretation of 26 U.S.C. § 6323. *PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58 (2d Cir. 1976). *See Aquilino v. United States*, 363 U.S. 509, 513–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). A tax lien in favor of the United States for amounts owed, as set out in 26 U.S.C. § 6321, is not valid against a holder of a security interest until notice of such lien has been filed in accordance with 26 U.S.C. § 6323(f) by the properly designated representative of the United States. *See* 26 U.S.C. § 6323(a). 26 U.S.C. § 6323(h)(1) defines a security interest as any interest in property acquired by contract to secure the payment or performance of an obligation or indemnifying against loss or liability. Such an interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a later judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth. 26 U.S.C. § 6323(h)(1).

### 3.

■ The first security interest of Citizens Bank-SBA was perfected on January 15, 1973. Notice of a federal tax lien was not filed in Dallas County until December 17, 1973, therefore said federal tax lien could not have attached to the funds in question prior to that date.

### 4.

■ The SBA involvement in the Citizens Bank loans was clear from the face of the notes, therefore its liens were perfected on the dates the applicable financing statement involved was filed. *See Kimble Foods, Inc. v. Republic National Bank of Dallas*, 557 F.2d 491 (5th Cir. 1977). As the assignee of Citizens Bank's notes and security agreements, the SBA may assert whatever priority that note has under state law, therefore its claim to priority is unaffected by the fact that formal assignment by the bank did not occur until April 25, 1975. *See Kimble Foods, Inc. v. Republic National Bank of Dallas, supra* at p. 496; *Texas Oil and Gas Corporation v. United States*, 466 F.2d 1040 (5th Cir. 1972); *Director of Reve-*

nue, *State of Colorado v. United States*, 392 F.2d 307 (10th Cir. 1968).

### 5.

█ The Court concludes that the security interest of Citizens Bank-SBA in the TTI property was perfected prior to the IRS liens, and continued in existence, although in altered form, as proceeds of the insurance paid upon the destruction of said property.

In reaching such a conclusion, the Court has had to make a determination that the Citizens Bank-SBA security interest in the TTI property was transferred to the insurance proceeds paid when that property was destroyed by fire.

(a) Section 9.306(a) of the Uniform Commercial Code (UCC) states that proceeds "includes whatever is received when collateral or proceeds is sold, exchanged, collected, or *otherwise disposed of.* (emphasis added)." V.T.C.A., Bus. & C. § 9.306(a). In a number of cases it has been held that insurance proceeds do not come within the meaning of "proceeds" under Section 9.306(a), the courts reasoning that the language of that section does not cover the involuntary destruction of collateral and the insurance payment thereof, since any obligation to pay comes from a personal surety contract rather than from the insured property itself. *See, e. g., Quigley v. Caron*, 247 A.2d 94 (Me.1968); *Universal CIT Credit Corp. v. Prudential Investment Corp.*, 101 R.I. 287, 222 A.2d 571 (1966); also *PPG Industries, Inc. v. Hartford Fire Ins., supra*, for additional cases and discussion. Those cases have been distinguished by some courts in cases where the security agreement required the debtor to obtain insurance on the (inventory) collateral with a loss payable to the benefit of the secured party. *See Fireman's Fund Amer. Ins. Co. v. Ken-Lori Knits, Inc.*, 399 F.Supp. 286 (E.D.N.Y.1975); *In re Hunter*, 9 UCC Rep. 928 (S.D.Ohio 1971). In such a situation, those courts have held that the collateral upon destruction would be considered "otherwise disposed of," and the proceeds would go to the secured party as proceeds under § 9.306(a).

(b) In *PPG Industries, Inc. v. Hartford Fire Ins., Co.*, 384 F.Supp. 91 (S.D.N.Y. 1974), aff'd 531 F.2d 58 (2d Cir. 1976); the trial court went further and, even in the absence of a loss-payee clause in the insurance policy involved, held that any construction of § 9.306(a) which did not include insurance within the meaning of the term proceeds would be opposed to the express intent of the parties in that case. The district court noted that the amended Uniform provision 9.306(a) (effective in Texas some 14 days after the fire involved in this case), while not adopted in New York, provided that "insurance payable by reason of loss or damage to the collateral is proceeds . . . ." *Id* at 96. The comment to the amendment stated that the "new . . . sentence . . . is intended to overrule various cases to the effect that proceeds of insurance on collateral are not proceeds of the collateral." In affirming the lower court, the Second Circuit noted that the amendment was "persuasive indication of the effect which § 9.306 was originally intended to have." *PPG Industries, Inc. v. Hartford Fire Ins. Co., supra* at 61. The Circuit Court observed that the state courts had not ruled on the question, as is true in the instant case, and declared, therefore, that a federal court was not precluded from rendering a decision consistent with the original intention underlying § 9.306. *Ibid.* This Court concurs with such reasoning.

(c) In addressing the "existence" requirement of the Internal Revenue Code, 26 U.S.C. § 6323(h)(1), in order for a security interest to prevail over a tax lien, this Court finds persuasive "the argument that the property which was [originally] the subject matter of the security agreement . . . was clearly in existence and [therefore] . . . the proceeds of the insurance are merely the collateral in another form. See 1 Coogan, Hogan and Vagts, *supra* 3A.03[c]." *PPG Industries, Inc. v. Hartford Fire Ins. Co., supra* at 62.

In *PPG Industries, Inc.*, the Second Circuit noted that the original security interest was in the inventory and when this was destroyed, the security interest continued,

under 9.306(a), first in the insurance policy and then in the proceeds therefrom, *supra* at 62. After declaring that the existence requirements of § 6323(h)(1) were "satisfied by the existence of an available insurance policy," the Circuit Court observed that "[a]ny contrary result would penalize the very party responsible for the existence of this fund in the first place." *Ibid.*

The same general fact situation is present in the instant case and this Court, being in agreement with the reasoning of the Second Circuit, concludes that the Citizens Bank-SBA security interest in the TTI property was transferred to the insurance proceeds paid when that property was destroyed.

### 6.

The SBA is entitled to the entire $175,000.00 amount in controversy.

### 7.

Eileen Markman's claim against the proceeds of the policy is denied. There is no evidence to show that Eileen Markman ever received a loss-payee endorsement from Aetna Insurance Company before the making of the policy on the date of fire, December 18, 1973, during which time the Citizens Bank of Kilgore and SBA were covered by a loss-payee endorsement from Aetna Insurance Co. Therefore, she has no legal interest in the proceeds of the policy which would prime the interest of SBA and IRS.

### 8.

Any finding of fact heretofore made which constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law which is a finding of fact is hereby adopted as a finding of fact.

Judgment will be entered in accordance with these findings.