Jonathan PASKOW, as Trustee,
Plaintiff-Appellee,

v.

CALVERT FIRE INSURANCE
COMPANY et al., Defendants,

United States of America,
Defendant-Appellant.

No. 76–3179.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1978.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Section, Crombie J. D. Garrett, Michael J. Roach, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Gars & Dixon, Robert Dixon, Miami, Fla., for plaintiff-appellee.

J. V. Crockett, III, Civ. Trial Section, Southern Region, Tax Div., Dept. of Justice, Washington, D. C., Corlett, Merritt, Killian & Sikes, Miami, Fla., for Calvert, etc.

Morton R. Goudiss, Miami Beach, Fla., for N. York Bakeries.

Friedman, Britton & Stettin, Miami, Fla., for I. F. S. Food Services Corp.

Arthur D. Frishman, Miami Beach, Fla., for Norman J. Harris.

Myers, Kaplan, Levinson & Kenin, Miami, Fla., for 2500 Town Corp.

Broad & Cassel, Bay Harbor Islands, Fla., David S. Kenin, Miami, Fla., for American Savings & Loan Assn. of Florida.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

The Algiers Hotel was damaged by fire. The building and some personal property in the building were mortgaged and were covered by insurance. This is a dispute over a portion of the insurance fund relating to personal property. The United States claims the fund by virtue of a tax lien filed against the mortgagor, while the mortgagee claims, first, that the tax lien cannot attach to the fund because the fund is not property belonging to the mortgagor and, second, that even if the tax lien can attach to the fund, he has a security interest in the fund that is valid against the tax lien. The district court held in favor of the mortgagee.[1] We agree and affirm.

## I. Is the fund property or a right to property belonging to the mortgagor?

The government's claim rests on the federal tax lien statute, which provides, "If any person liable to pay tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The threshold question is whether the disputed insurance fund constitutes property or a right to property belonging to the mortgagor, who is the taxpayer in this case.[2] We conclude that it does.

---

1. The district court's opinion is reported at 38 A.F.T.R.2d 76–5008.

2. State law determines whether the taxpayer has property or a right to property to which the tax lien may attach. *Aquilino v. U. S.,* 363 U.S.

## A. The mortgagee's rights under the insurance policy.

The insurance policy has a loss payable clause in favor of the mortgagee's predecessor in interest.[3] The clause is a standard mortgage clause, also known as a New York or union mortgage clause. 5A J. Appleman, Insurance Law and Practice § 3401, at 282. It is customarily used with real property insurance and is regarded as a separate contract between mortgagee and insurer. *Id.* at 286–88. *Glens Falls Ins. Co. v. Porter,* 44 Fla. 568, 33 So. 473, 478 (1902).

■ Because the mortgagee has a contractual right to money payable under the loss payable clause, the mortgagor has no right to that money. Thus the money or right to receive the money is not property or a right to property belonging to the mortgagor. The loss payable clause, however, is expressly limited "to buildings only." The policy defines "buildings" to exclude most personal property.[4] Thus the mortgagee does not have a contractual right to the portion of the insurance fund relating to the excluded personal property.

■ The mortgagee argues that the limitation "to buildings only" is inconsistent with the provision that the loss shall be payable to the mortgagee "as interest may appear under all present and future mort-gages" because his interest under the mortgage extends to personal property. We see no inconsistency. The quoted language is simply language of limitation, which recognizes that the mortgagee can have no greater interest in the insurance fund than in the insured collateral. 5A J. Appleman, Insurance Law and Practice, § 3404, at 305–06. The language does not operate to expand the clause beyond its express limitation "to buildings only." [5]

## B. The mortgagee's equitable rights.

■ The mortgagee does have, however, an equitable right to the disputed insurance fund. The mortgagor agreed to "keep the building and all equipment and personal property now or hereafter on said premises" covered by insurance against loss by fire or other casualty in an amount sufficient to protect the mortgagee's interest. The mortgagor procured the insurance policy pursuant to this agreement. Florida law provides that when a mortgagor has procured an insurance policy pursuant to such an agreement the mortgagee has an equitable lien on the insurance fund. *Atwell v. Western Fire Insurance Co.,* 120 Fla. 694, 163 So. 27 (1935). Although Florida case law has characterized the mortgagee's rights as being fixed at the time of loss,[6]

509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365, 1368–69 (1960).

**3.** "C. Mortgage clause: Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations): Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

**4.** *See also J. B. Kramer Grocery Co. v. Glens Falls Ins. Co.,* 497 F.2d 709, 710–11 (CA8, 1974); *London & Provincial Marine & Gen. Ins. Co. v. Sykes,* 66 S.W.2d 382, 383 (Tex.Civ.App. 1933).

**5.** *Compare J. B. Kramer Grocery Co. v. Glens Falls Ins. Co.,* 497 F.2d 709 (CA8, 1974), where the court regarded an express limitation to buildings only as repugnant to the policy because the loss payee had a security interest in only personal property.

**6.** In *Sea Isle Operating Corp. v. Hochberg,* 198 So.2d 336 (Fla.App.1967), a Florida court said that the mortgagee's right to receive the insurance fund is fixed at the time of the loss but what the court meant was that foreclosure by the mortgagee subsequent to the casualty loss does not extinguish his equitable right to the insurance fund.

the mortgagee must act to protect his rights by giving notice of his claim to the insurer. If he does so, the insurer cannot pay a claim under the policy until the rights of the mortgagor and mortgagee are adjusted. *See also* Annot., 92 A.L.R. 559 (1934).

■ We hold that the portion of the insurance fund that is not payable to the mortgagee under the loss payable clause is property or a right to property belonging to the mortgagor. The mortgagor has a contractual or legal right to this fund. The mortgagee on the other hand has only an equitable right, specifically an equitable lien. The mortgagee cannot obtain the fund by proceeding directly against the insurer.[7] Rather he will not have a legal right to the fund until his rights and the mortgagor's have been adjusted.[8] Thus we conclude that the disputed insurance fund is, at least initially, property belonging to the mortgagor.[9]

## II. Does the mortgagee have a security interest in the insurance fund?

Even though the disputed insurance fund is property belonging to the mortgagor, we conclude that the mortgagee is entitled to the fund because he has a security interest in the fund that is valid against the federal tax lien.

## A. The mortgagee's security interest in proceeds.

The federal tax lien statute provides that the federal tax lien shall not be valid against a security interest existing before the tax lien filing. 26 U.S.C. § 6323(a). "Security interest" is defined to mean "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." 26 U.S.C. § 6323(h)(1).

■ The mortgagee had a U.C.C. security interest in the building and personal property. The government does not contest on appeal that this security interest was perfected. The mortgagee also had a U.C.C. security interest in proceeds. We believe the Florida Supreme Court would hold that the disputed insurance fund constituted proceeds.

Florida has enacted the 1966 version of U.C.C. § 9–306(1), which provides:

---

**7.** When a mortgagor filed a bill in equity against the insurer in *Atwell,* the Florida Supreme Court held that the insurer's motion for interpleader should be granted, essentially regarding the action as one against the mortgagor. *Sumlin v. Colonial Fire Underwriters,* 158 Fla. 95, 27 So.2d 730, 731 (1946), also states that the mortgagee's remedy is against the mortgagor.

**8.** *Compare U. S. v. Durham,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960), where the Third Circuit had characterized payments contractually owing from an owner to a general contractor as not being property belonging to the general contractor because state law provided subcontractors a *"direct, independent cause of action against the owner* to the extent of any amount due under the general construction contract."  363 U.S. at 525, 80 S.Ct. at 1283, 4 L.Ed.2d at 1373 (emphasis added). The Supreme Court affirmed, saying this characterization was not clearly erroneous or unreasonable.

**9.** The few courts that have considered cases with similar facts have either explicitly or implicitly concluded that funds payable under the terms of the policy to the mortgagor when the policy was procured for the benefit of the mortgagee are property of the mortgagor for the purposes of the federal tax lien statute. *Corrigan v. United States Fire Ins. Co.,* 427 F.Supp. 940 (S.D.N.Y.1977) (semble); *Ray E. Nelson Transp. Co. v. Tri-State Ins. Co.,* 231 F.Supp. 492, 495 (D.Neb.1964) (dictum); *see Andrello v. Nationwide Mut. Ins. Co.,* 29 A.D.2d 489, 289 N.Y.S.2d 293 (Sup.Ct.1968) (assumed to be property belonging to mortgagor); *cf. PPG Indus., Inc. v. Hartford Fire Ins. Co.,* 384 F.Supp. 91 (S.D.N.Y.1974) (security agreement assigned funds to mortgagee, but assignment regarded as equitable lien only) *aff'd,* 531 F.2d 58 (CA2, 1976) (apparently agreeing with district court on this issue). In *Home Ins. Co. v. B. B. Rider,* 212 F.Supp. 457 (D.N.J.1963), the mortgagee was named in a loss-payable clause, but in the absence of evidence whether the policy contained a mortgagee clause the court regarded the insurance funds "as vesting, at least momentarily," in the mortgagor. *But cf. Insurance Co. of North America v. Putney,* 136 F.Supp. 894 (E.D.Va.1955) (not specifically analyzed on "no property" ground).

"Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are "cash proceeds." All other proceeds are "non-cash proceeds."

19C Fla.Stat.Ann. § 679.9–306(1). Florida has not enacted the 1972 version of U.C.C. § 9–306(1), which added another sentence:

Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.

Of this additional language the Official Comment says, "It makes clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section."

There is a split of authority whether the 1966 version of U.C.C. § 9–306(1) should be construed to include insurance payable by reason of loss or damage to collateral. Many courts have held that such an insurance fund cannot constitute proceeds under the 1966 version,[10] but their arguments have been soundly rebutted by the Second Circuit in *PPG Industries, Inc. v. Hartford Fire Insurance Co.,* 531 F.2d 58 (CA2, 1976) (construing New York law).[11] *See also* Boroff, *Insurance Proceeds Under Section 9–306: Before and After,* 1974 Commercial L.J. 442; Henson, *Insurance Proceeds as*

"Proceeds" Under Article 9, 18 Catholic U.L.Rev. 453 (1968).

Two principal arguments have been advanced against construing § 9–306(1) to include insurance payable by reason of loss or damage to collateral.[12] First, § 9–104(g) provides that the U.C.C. does not apply "to a transfer of an interest or claim in or under any policy of insurance." Section 9–104(g), however, is directed not at the insurance of collateral but the creation of a security interest in an insurance policy by making the policy itself the collateral. *See* Comment 7 to § 9–104. Second, the scope of § 9–306(1) is ambiguous and can be read as limited to voluntary disposition of the collateral. The section speaks of collateral being "sold, exchanged, collected or otherwise disposed of." The verb "disposed of" connotes an action, and all of the examples specifically given concern voluntary disposition. The 1966 version of § 9–306(2) supports this reading by its reference to the debtor's "actions."[13] But the ambiguity of § 9–306 can just as easily be resolved to favor the secured party. Despite the examples, the section is not expressly limited to voluntary dispositions, and the inference from § 9–306(2) is hardly compelling. Section 9–306(2) basically says that a security interest does not continue in collateral when the secured party authorizes its disposition. It is hard to imagine a secured party authorizing an involuntary disposition. Thus the subsection on authorized dispositions may logically refer only to voluntary dispositions even though the general section on proceeds has a broader scope.

---

**10.** *Universal C.I.T. Credit Corp. v. Prudential Investment Corp.,* 101 R.I. 287, 222 A.2d 571 (1966); *Quigley v. Caron,* 247 A.2d 94 (Me. 1968); *White v. Household Finance Corp.,* 158 Ind.App. 394, 302 N.E.2d 828, 836 n. 9 (Ind.Ct. App.1973); *In re Levine,* 6 U.C.C.Rep. 238 (D.Conn.1969); *In re Hix,* 9 U.C.C.Rep. 925 (S.D.Ohio 1969); *Distributor's Warehouse, Inc. v. Madison Auto Parts & Service Corp.,* 8 U.C. C.Rep. 569 (Wis.Cir.Ct.1970); *In re Whitacre,* 21 U.C.C.Rep. 1169 (S.D.Ohio 1976); *see In re Waltman,* 18 U.C.C.Rep. 576 (S.D.Ala.1975); *In re Parks,* 19 U.C.C.Rep. 334 (E.D.Tenn.1976).

**11.** The decision has since been followed by a New York court. *First National Bank of Highland v. Merchant's Mutual Insurance Co.,* N.Y. Sup., 21 U.C.C.Rep. 892, 392 N.Y.S.2d 836

(1977). It was also followed in *Aetna Ins. Co. v. Texas Thermal Indus.,* 436 F.Supp. 371 (E.D. Tex.1977).

**12.** A third argument reasons that the insurance fund cannot be proceeds because it arises from a personal contract and does not attach to the property. *See, e. g., Universal C.I.T., supra.* This argument is unconvincing because another personal contract, one for the sale of the collateral, clearly may give rise to proceeds.

**13.** The provision, more fully, refers to any disposition "by the debtor unless his action was authorized . . . ." The 1972 version of § 9–306(2) simply refers to any disposition "unless the disposition was authorized. . . . "

Because § 9–306(1) can reasonably be construed to include insurance payable by reason of loss or damage to the collateral, we agree with the Second Circuit that the amendment to § 9–306 incorporated in the 1972 version of the U.C.C. "is a persuasive indication of the effect which § 9–306 was originally intended to have." *PPG Industries, supra,* 531 F.2d at 61.

B. The property-in-existence requirement.

■ It is not enough, however, that the mortgagee has a U.C.C. security interest in the disputed insurance fund. The federal tax lien statute defines "security interest" to require that the security property be in existence when the federal tax lien is filed.

A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1). In this case the property, the disputed insurance fund, arguably did not come into existence until the time of loss or perhaps not until the insurance company admitted its liability under the policy. However, we agree with the Second Circuit in *PPG Industries, supra,* 531 F.2d at 62, that the insurance fund is merely the collateral in another form. Accordingly, we regard the insurance fund and the original collateral as one and the same property for the purpose of determining when the property came into existence.[14]

■ Thus although the federal tax lien can attach to the disputed insurance fund because the fund is property belonging to the mortgagor, the mortgagee has a security interest in the fund that is valid against the federal tax lien.

The judgment of the district court is AFFIRMED.

14. We have no occasion to consider the correctness of the Second Circuit's dictum suggestion that a different result might follow if the

mortgagee did not require the mortgagor to procure insurance. *See* 531 F.2d at 63 n. 7.