AETNA INSURANCE COMPANY,
Plaintiff-Appellee,

v.

TEXAS THERMAL INDUSTRIES, INC.,
et al., Defendants-Appellants,

v.

SMALL BUSINESS ADMINISTRATION
et al., Defendants-Appellees.

No. 77–3504
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 21, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

B. Reagan McLemore, III, Longview, Tex., for defendants-appellants.

C. Houston Abel, Asst. U. S. Atty., John Hannah, Jr., U. S. Atty., Tyler, Tex., for Small Business Adm.

J. Donald Guinn, Tyler, Tex., for Charles F. Dickerson.

Foster T. Bean, Kilgore, Tex., for Allied Citizens Bank.

Jerry Bain, Tyler, Tex., for Associated Adjusters, Inc.

Vernon I. Lay, Jr., Dallas, Tex., for Nytco Service, Inc.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

This interpleader action requires resolution of three competing claims to the insurance proceeds due Texas Thermal Industries, Inc. (TTI) after its insured inventory was destroyed in a fire. The principal claimants are (1) the Small Business Administration (SBA), which bases its claim to the proceeds upon a UCC security interest in the inventory, accounts receivable, machinery and equipment of TTI, (2) the Internal Revenue Service, which is asserting various federal tax liens against all property interests belonging to TTI, and (3) Eileen Markman, to whom TTI assigned its right to receive a portion of the insurance fund.

The case was submitted to the District Court upon an agreed statement of facts. The District Court entered findings of fact and conclusions of law, reported at 436 F.Supp. 371, and held that the SBA was entitled to the entire fund. We affirm.

The SBA interest stems from two loans made by the Citizens Bank of Kilgore, Texas, in participation with the SBA, to TTI. The loans, in the amounts of $200,000 and $150,000, were disbursed on January 5, 1973, and June 15, 1973, respectively. Collateral for these loans consisted of a security interest in and to all inventory, accounts receivable, machinery, and equipment of TTI. Financing statements were filed with the County Clerk of Gregg County, Texas, on January 15, 1973, and June 21, 1973.[1]

The loan authorization issued by the SBA on both loans required that TTI obtain hazard insurance on the mortgaged collateral with loss-payee endorsements in favor of Citizens Bank and the SBA. On October 2, 1973, Aetna Insurance Company issued a hazards insurance policy to TTI, with loss-payee endorsements in favor of Citizens Bank and the SBA. Under the second loan authorization, TTI was also required to maintain 500 units of finished goods inventory under a bonded warehouse arrangement. A large portion of this inventory was destroyed in a warehouse fire on December 18, 1973.

On April 25, 1974, Citizens Bank assigned both the $200,000 note and the $150,000 note, as well as its interest in the secured collateral, to the SBA. As of June 24, 1974, the $150,000 note had a balance of $109,-885.16 plus accrued interest from that date. As of September 24, 1974, the $200,000 note had a balance of $190,437.85 plus accrued interest.

The federal tax liens asserted by the IRS stem from a number of tax liabilities incurred by TTI and assessed between September 3, 1973 and August 5, 1974. The first filing of notice of any of these federal

---

1. Both the security agreements and the financing statements indicated that the security interests extended to proceeds of the secured collateral.

tax liens did not occur until December 17, 1973—well after the Citizens Bank/SBA security interests had been perfected. According to the agreed statement of facts, there remains an outstanding assessed balance of $42,744.48 plus interest.

Eileen Markman's claim to the insurance proceeds stems from a loan of $16,000 she made to TTI shortly after the fire to help pay immediate expenses and maintain the business as an operating concern. As an inducement for the loans and as security for its repayment, on December 27, 1973, TTI executed an assignment of $11,000 of its right to receive proceeds under the Aetna policy to Eileen Markman.

A controversy subsequently arose between the insurance company and TTI over the extent of the loss occasioned by the warehouse fire in December 1973. By stipulation of all interested parties it was finally agreed after extensive negotiations that the amount of loss was $175,000, and that Aetna would deposit this sum into the Registry of the Court in an interpleader action.[2] The District Court concluded that the SBA lien had priority as to all others, and since its claim exceeded the amount in the insurance fund, the entire $175,000 was awarded to the SBA.

The appellants (TTI and Eileen Markman) argue the following points: (1) that the federal tax lien had priority over the SBA lien because the latter was not "choate"; (2) that Texas Business & Commercial Code § 9.306(a), as it existed at the time of the fire loss, excluded the fire insurance funds from the definition of "proceeds"; and (3) that Eileen Markman is entitled to a portion of the fire insurance fund. We will address each of these issues in order.

(1) The first issue to be decided is the relative priority as between the federal tax liens and the contractual SBA liens asserted under Texas law. The principal statutory provisions governing federal tax liens are

Sections 6321–6323 of the Internal Revenue Code, 26 U.S.C. §§ 6321–6323. Section 6321 provides that a lien shall arise in favor of the United States upon all property and property rights of any taxpayer to the extent of any tax liability which that taxpayer neglects or refuses to pay after demand. By virtue of § 6322, this lien arises automatically on the date of assessment. Section 6323, as overhauled by the Federal Tax Lien Act of 1966,[3] speaks to priority conflicts and subordinates the federal tax liens created under §§ 6321 and 6322 to certain competing private or nonfederal liens. Of particular importance to this case are subsections (a) and (h)(1). The former provides that a federal tax lien imposed by § 6321 is not valid as against the holder of a security interest until proper notice of the federal lien has been filed. 26 U.S.C. § 6323(a). "Security interest" is defined by § 6323(h)(1) in the following terms:

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Notice of any of the federal tax liens in this case was not filed until December 17, 1978, while the SBA security interests were perfected with the filing of the financing statements on January 5 and June 15, 1973. Thus, by the explicit terms of §§ 6323(a) and (h)(1), the federal tax liens in this case are not valid as against the SBA liens, provided the SBA's secured interest in proceeds encompasses insurance proceeds.

The appellants however contend that despite the provisions of § 6323, the SBA liens

---

**2.** After suit was filed under 28 U.S.C. § 1335, sovereign immunity was waived and the United States of America was substituted as a party-defendant for both the SBA and the IRS.

**3.** Pub.L.No.89–719, § 101, 80 Stat. 1125 (1966).

are not prime because they are not "choate." They base their argument on the long-established principle of federal common law governing priority conflicts between nonfederal or private liens or obligations and federal claims for the collection of debts owing the United States that only "choate" nonfederal liens prime competing federal claims.[4] In a series of cases between 1950 and 1963, the Supreme Court applied this choateness doctrine to questions of priority involving federal tax liens and evolved the following test: in order for a nonfederal lien to prevail over a later filed federal tax lien, the "identity of the lienor, the property subject to the lien, and the amount of the lien" must be established as of the date of filing of notice of the tax lien.[5] Appellants argue that the SBA liens do not satisfy that choateness test.

▮▮▮ That may or may not be the case, but Congress has spared us the necessity of engaging in the metaphysical analysis necessary to answer the question. As the Treasury increased its reliance upon the tax lien as a method for collecting outstanding taxes, and as the financing world increasingly relied upon security interests in inventory and accounts receivable, the harshness of the choateness rule and the vagaries of its application in the tax lien context caused increasing confusion and generated increas-

ing criticism. The Federal Tax Lien Act of 1966, as codified at 26 U.S.C. § 6323, represented a response to the problem. The purpose of the Act was, at least in large part, to "conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code."[6] We therefore conclude, and hold, that whatever role the "choateness" rule of federal common law may play in other contexts,[7] it has been supplanted by the provisions of § 6323 with respect to tax lien priority questions as to which that statute provides an unambiguous federal law answer. *Cf. Slodov v. United States,* 1978, 436 U.S. 238, 256–58, 98 S.Ct. 1778, 56 L.Ed.2d 251. Since § 6323 specifically subordinates federal tax liens to security interests—such as those asserted by the SBA—that are perfected under the U.C.C. provisions of state law prior to the filing of the tax lien, the SBA liens have priority, regardless whether they are "choate" or not under formerly applicable common law principles.[8]

(2) But appellant also argues that the SBA's security interests do not extend to the insurance fund arising from the destruction of TTI's inventory. They contend that Texas Business & Commercial Code § 9.306(a) (1968) did not, at the time of the fire loss, include insurance proceeds within the term "proceeds."[9] They point to the

---

4. *See generally* Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien,* 63 Yale L.J. 905 (1954).

5. *See, e. g., United States v. Pioneer American Ins. Co.,* 1963, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770; *United States v. New Britain,* 1953, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520; *see generally* Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,* 81 Harv.L.Rev. 1369, 1375–80.

6. H.R.Rep.No.1884, 89th Cong., 2d Sess. 1 (1966).

7. *Cf. United States v. Crittenden,* 5 Cir., 1977, 563 F.2d 678, *cert. granted,* —— U.S. ——, 99 S.Ct. 77, 58 L.Ed.2d 108 (1978) ("choateness" doctrine does not apply to defeat private mechanic's lien competing with perfected security interest asserted by Farmers Home Administration); *Kimbell Foods, Inc. v. Republic National Bank,* 5 Cir., 1977, 557 F.2d 491, *cert. granted,*

436 U.S. 903, 98 S.Ct. 2230, 56 L.Ed.2d 400 (1978) ("choateness" doctrine does not apply to defeat perfected security interest covering future advances competing with security interest asserted by Small Business Administration).

8. The parties have not argued the applicability of R.S. 3466, 31 U.S.C. § 191, which states that in settling the affairs of certain insolvents "the debts due to the United States shall be first satisfied," and were therefore have no occasion to consider its interaction with the Federal Tax Lien Act of 1966.

9. An adoption of the 1966 version of Article 9 of the Uniform Commercial Code, Texas Business & Commercial Code § 9.306(a), as it existed at the time of the warehouse fire, provided:

    "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a

subsequent amendment of § 9.306(a), which did not go into effect until January 1, 1974 (two weeks after the fire), as proof of their argument.[10]

■ Resolution of the question of course requires us to look to state law. Unfortunately, there are no Texas decisions directly on point. We believe, however, that the Texas Supreme Court, were it presented with this question, would hold that the insurance fund constitutes proceeds of the secured collateral.

We base this conclusion on three considerations. First, Texas courts faced with analogous questions have held that where a mortgagor takes out casualty insurance on mortgaged collateral with a loss-payee clause in favor of the mortgagee, the claim of the mortgagee to any proceeds of the policy is prior to the claim of the mortgagor.[11] Second, when the Commissioners on Uniform State Laws amended U.C.C. § 9–306(1) to provide that "insurance payable by reason of loss or damage to the collateral is proceeds," the accompanying Reporter's Note stated that the "new * * * sentence * * * is intended to overrule various cases to the effect that proceeds of insurance are not proceeds of the collateral." This represents a persuasive indication that the original intent underlying § 9–306 was to include insurance within the scope of "proceeds." [12] Third, although many courts in other states have held that an insurance fund cannot constitute proceeds under the original version of § 9–306, the trend of most recent decisions is toward an opposite conclusion.[13] We therefore hold that not only do the SBA security interests prime the federal tax lien, but also that they extend to the $175,000 insurance fund.

(3) Simple arithmetic disposes of the third issue. Since the SBA lien had priority over all other liens, and since the $175,000 fund is completely consumed by the SBA claim (which exceeds $300,000), there simply is nothing left for Eileen Markman to claim, regardless of whether her lien is equitable or not.

The judgment of the District Court is AFFIRMED.

---

contract right. Money, checks and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

10. The amendment, adopting the 1972 version of U.C.C. § 9–306, specifically includes insurance proceeds:

"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

11. See, e. g., Davis v. Lewis, Tex.Ct.Civ. App.,1972, 487 S.W.2d 411 (no writ); Minniefield v. Consolidated Lloyds, Tex.Ct.Civ. App.,1958, 316 S.W.2d 428 (no writ).

12. See PPG Industries, Inc. v. Hartford Fire Ins. Co., 2 Cir., 1976, 531 F.2d 58, 61.

13. E. g., Paskow v. Calvert Fire Ins. Co., 5 Cir., 1978, 579 F.2d 949 (construing Florida law); PPG Industries, Inc. v. Hartford Fire Ins. Co., S.D.N.Y., 1974, 384 F.Supp. 91, aff'd, 2 Cir., 1976, 531 F.2d 58 (construing New York law); In re Hunter, S.D.Ohio, 1971, 9 U.C.C.Rep. 928; Insurance Management Corp. v. Cable Services of Florida, Inc., Fla.Dist.Ct.App.1978, 359 So.2d 572; First National Bank of Highland v. Merchant's Mutual Ins. Co., N.Y.Sup.Ct., 1977, 89 Misc.2d 771, 392 N.Y.S.2d 836; Northside Properties, Inc. v. Ko-Ko Mart, Inc., 1976, 28 N.C. 532, 222 S.E.2d 267, cert. denied, 1976, 289 N.C. 615, 223 S.E.2d 392. For review and rebuttal of the principal arguments against construing U.C.C. § 9–306(1) to include insurance payable by reason of loss or damage to collateral, see Paskow, supra, and PPG Industries, supra.